565 So.2d 247 (1990)
Ken MEGGINSON; the Democratic Party of the State of Alabama; and John Baker as state party chairman for the Democratic Party of Alabama
v.
J.E. TURNER.
89-1390.
Supreme Court of Alabama.
July 27, 1990.
Special Opinion Substituted on August 3, 1990.
Robert S. Edington, Mobile, for appellant.
Norman J. Gale, Jr. of Clay, Massey & Gale, Mobile, for appellee.
Richard F. Allen of Capell, Howard, Knabe & Cobbs, Montgomery, for amicus curiae Perry A. Hand, as Secretary of State.
Justice Maddox's Special Opinion Substituted on August 3, 1990.
*248 PER CURIAM.
The plaintiff, J.E. Turner, the Republican nominee for the House of Representatives, District 102, sued Perry Hand, as secretary of state of the State of Alabama; John Baker, as state party chairman for the Democratic Party of Alabama; L.W. Noonan, as probate judge of Mobile County; Ken Megginson; and the Democratic Party of the State of Alabama, alleging that Ken Megginson was not a legally qualified candidate for the Democratic nomination for election to the House of Representatives from District 102, because, Turner alleges, Megginson failed to timely file a statement naming his principal campaign committee as required by Ala.Code 1975, § 17-22A-4. Turner sought injunctive relief restraining the defendants from issuing a certificate of nomination to Megginson. The Circuit Court of Mobile County granted the injunctive relief, and this expedited appeal followed.
The trial court found and held as follows:
"[T]he Court finds that Ken Megginson filed his statement naming his principal campaign committee more than five days after he filed his announcement and declaration of candidacy, contrary to the requirements of Section 17-22A-4[[1]] of the Code of Alabama requiring that the statement be filed within five days. The provisions of Section 17-22A-4 are mandatory. Since Ken Megginson failed to comply, [he] may not be certified as the nominee of the Democratic Party for House District 102 and his name may not appear on the ballot for the general election. Section 17-22A-4 of the Code of Alabama, Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (1986); Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967); Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966); Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966)."
After studying the record and the briefs of counsel and amicus curiae, we conclude that the trial court's ruling removing Megginson as a candidate is due to be affirmed, on the authority of the cases cited by the trial court.
Our affirmance, however, is not to be understood as agreement with the plaintiff that the trial court's judgment prevents the Alabama Democratic Party from exercising its prerogative, as provided by § 17-16-41, to nominate a candidate for the nomination vacated by the court's judgment. Because the trial court had no jurisdiction to determine whether the party could fill the vacancy, we decline to interpret its judgment as holding that it could not. Indeed, we construe the trial court's statement that "his name may not appear on the ballot for the general election" as being made in the context of the only issue over which it had jurisdiction: whether, after qualifying as the only candidate for the Democratic Party's nomination for the office in question, Megginson's failure to meet the five-day deadline prescribed by § 17-22A-4 requires his removal as a candidate and thus creates a vacancy that is subject to being filled pursuant to § 17-16-41.
Further, we find nothing in the statute or in the cases cited by the appellee that prevents the Democratic Party's executive committee from exercising its prerogative to fill the vacancy by such a method as the committee "may see fit to pursue." § 17-16-41. The appellee's reliance on Harris v. Weatherford, 459 So.2d 876 (Ala. 1984), is misplaced. Because Harris failed to file his initial qualifying paper with the appropriate office, he never became a candidate, and thus his "disqualification," under those circumstances, did not create a vacancy. Here, Megginson properly qualified as a candidate, as defined by § 17-22A-2 and thus was subject to the *249 five-day requirement of § 17-22A-4. Because he then failed to meet the five-day statutory deadline, his candidacy was revoked and a vacancy occurred.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, ADAMS, STEAGALL and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX, J., concurs in part and dissents in part.
SHORES, J., not sitting.
MADDOX, Justice (concurring in part; dissenting in part)
When I filed my special opinion in this case on July 27, 1990, it was my understanding that the Democratic Executive Committee was scheduled to meet that day. In view of the fact that the Committee did not meet that day, and in view of the fact that I did not have sufficient time to write an opinion adequately expressing the reasons for my dissenting views, I have now taken the time to more fully state the reasons why I think that there is no vacancy which the Democratic Party can fill under the provisions of Alabama law. I especially wanted my dissenting opinion to contain what I consider to be the critical question in this case: What the legislature intended by the words "where a vacancy may occur in any nomination," which are contained in Ala.Code 1975, § 17-16-41.[1] I now withdraw that special opinion filed July 27, 1990 and substitute the following opinion, which expands on the reasons why I think that there is no vacancy that the Democratic Party can fill under the provisions of Alabama law:
I concur completely in that portion of the opinion that affirms the trial judge's determination that Megginson could not be certified as the nominee of the Democratic Party for House District 102. I must respectfully disagree, however, with the conclusion of the majority that Megginson's removal as a candidate authorizes the Alabama Democratic Party, under the provisions of Ala.Code 1975, § 17-16-41, to nominate a candidate to appear on the general election ballot, because, under the facts of this case, there was no "nomination" by the Democratic Party of Megginson that could have become vacant within the meaning of the law when it was determined that Megginson had failed to become the Democratic nominee because of his failure to comply with the provisions of law regulating the holding of primary elections in this State.[2]
The legislature of this State has provided the method for determining when there is a "vacancy" in a "nomination" made by a political party and has provided for a party executive committee to fill a vacancy in a nomination under certain circumstances. Section 17-16-41 provides:
"The state executive committee, in cases where the office to be filled is not a county office, and the county executive committee, in cases where the office to be filled is a county office, but subject to the approval of and in accordance with the method prescribed by the state executive committee, where a vacancy may occur in any nomination, either by death, resignation, revocation or otherwise, or in case of any special election, shall have the power and authority to fill such vacancy, either by action of the committee itself or by such other method as such committee may see fit to pursue."
(Emphasis added.)
The critical question, of course, is whether there had been a nomination as contemplated by this statute. Under the facts of this case, I do not believe that Megginson ever became the nominee of the Democratic Party, because he admittedly failed to comply with the election laws governing *250 the holding of primary elections. Because he was the only candidate for the office he sought, his failure to comply with the law, in my opinion, left the Democratic Party without a nominee for this particular general election. I think that the legal position of the party is the same as if no one had declared as a candidate to become the nominee of the party.
The law that applies in this case is contained in at least three cases of this Court: Harris v. Weatherford, 459 So.2d 876 (Ala. 1984); Foster v. Dickinson, 293 Ala. 298, 302 So.2d 111 (1974); and Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967).
In Harris v. Weatherford, a case the majority cites and attempts to distinguish unsuccessfully, I believeregistered voters in Mobile sought to prevent the name of one Cecil B. King from being certified or printed on the general election ballot as a Republican nominee for a district court judgeship. In that case, the Republican Party wanted to certify King as the Republican nominee under the provisions of Ala. Code 1975, § 17-16-41, on the ground that a "vacancy" had occurred because one Joseph D. Thetford, who had filed his declaration of candidacy for the judgeship, had withdrawn his name from consideration as a candidate. Thetford had filed his "declaration of candidacy" in Mobile County in the office of William Stoudenmire, who was chairman of the Mobile County Republican Committee and who was a member of the State Republican Committee. In that case, the Court found that Thetford's filing in Mobile did not comply with the statutory requirement that all candidates for nomination to state public office "shall file their declaration of candidacy with the state party chairman." 459 So.2d at 879.[3]
The majority seeks to distinguish Harris v. Weatherford on the following grounds:
"The appellee's reliance on Harris v. Weatherford, 459 So.2d 876 (Ala.1984), is misplaced. Because Harris failed to file his initial qualifying paper with the appropriate office, he never became a candidate, and thus his `disqualification,' under those circumstances, did not create a vacancy. Here, Megginson properly qualified as a candidate, as defined by § 17-22A-2, and thus was subject to the five-day requirement of § 17-22A-4. Because he then failed to meet the five-day statutory deadline, his candidacy was revoked and a vacancy occurred."
I find the majority's distinction troubling. This Court in Harris v. Weatherford stated the reason for its holding, as follows:
"Central to our holding of affirmance is the fact that Thetford's declaration of candidacy was not timely filed with the office of the state party chairman. In other words, it is not the designation of a third-party to act for the state party chairman (the party with whom Thetford filed his declaration) that is fatal to Thetford's compliance with § 17-16-11(a). Rather, it is his failure to file with the office of the state party chairman that constitutes noncompliance. Indeed, the Alabama Republican Executive Committee's official resolution accepting and electing to come under the primary election laws of Alabama specified, in part, as follows:
"`Each person desiring to be elected as a nominee of the Republican Party for public office other than for county office ... shall, not earlier than June 1, 1984, and not later than 5:00 p.m. on July 6, 1984, file with the Chairman of *251 the Alabama Republican Executive Committee at State Headquarters in Birmingham, Alabama, a declaration of candidacy....' (Emphasis supplied.)
"While we agree that a filing of a declaration of candidacy with the office of the chairman of the political party's executive committee is compliance as contemplated by the statute, we do not agree that a filing with some other person at some other place meets the mandatory requisites which are plainly and unambiguously set forth in § 17-16-11(a)."
459 So.2d at 880.
Unquestionably, the reason the Court gave in Harris v. Weatherford for determining that there was no "vacancy" was the fact that Thetford had failed to comply with the mandatory requirements of law. What is different here? I find nothing. Megginson failed to comply with the law.
Megginson's distinction of Harris v. Weatherford, contained in a reply brief, is just as troubling. He says, "[W]hen Megginson was certified by Honorable John Baker, Chairman of the Democratic Party, as the Democratic Party's nominee for House District 102, Megginson became, in truth and in fact, the duly qualified nominee of the Democratic Party," and "He was such duly qualified nominee at least until the expiration of the five days subsequent to his qualifying with the Democratic Party (by whatever means those days may be calculated)." Megginson seems to suggest he became the "nominee" when he filed his declaration of candidacy, and then ceased to be the nominee when he failed to file the papers appointing his finance committee. That cannot be the law; clearly he was not the nominee as soon as he filed his declaration.
Except for the fact that the reason for the disqualification in this case is the failure of the candidate to timely file a statement naming his principal campaign committee, as required by Ala.Code 1975, § 17-22A-4, and in Harris v. Weatherford the disqualification was based upon the candidate's failure to file his declaration of candidacy with the proper person, I can find no legal differences in the two cases:
 Harris v. Weatherford: This case:
 Candidate files declaration Candidate files declaration
 of candidacy of candidacy
 Party chairman certifies Party chairman certifies
 candidate as nominee of the candidate as nominee of the
 party to the secretary of party to the secretary of
 state[4] state
 Court case filed challenging Court case filed challenging
 candidate's qualifications candidate's qualifications
 because of failure to comply because of failure to comply
 with election laws with election laws
 Court finds that candidate Court finds that candidate did
 did not comply with mandatory not comply with mandatory
 requirements of law requirements of law
 Court finds that there was "no This Court, in my opinion,
 vacancy which could be filled erroneously finds that there
 by the Republican Party under is a vacancy.
 § 17-16-41." 459 So.2d at 880.
*252 Not only do I fail to find any legal distinction between the facts of Harris v. Weatherford and the facts of this case, my research shows that the holding in Harris v. Weatherford is consistent with the holding of this Court in Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967), a case in which a candidate for sheriff of Greene County sought to enjoin the judge of probate from placing the name of another candidate for sheriff on the general election ballot. In that case one Gilmore claimed to be the nominee of the Greene County Freedom Organization, claiming to have been nominated at a mass meeting, and the question presented in the case was when Gilmore had legally declared his candidacy, because there was a question whether he had failed to comply with the very same provisions of law that are involved here. The question was whether his declaration of candidacy was made on May 3, 1966, when a certificate of nomination was filed with the judge of probate. In that case, Gilmore attempted to become the nominee by, on September 9, 1966, filing a certificate in which he declared that he wished to become a candidate for sheriff, in effect attempting to say that he had not declared his candidacy on May 3, 1966. This Court held that "the announcement of Gilmore's candidacy occurred on May 3, 1966, when the certificate of the mass meeting was filed," and that "his name shall not be allowed to go on the ballot."
The controlling case on whether there has occurred a "vacancy ... in any nomination" is this Court's case of Foster v. Dickinson, 293 Ala. 298, 302 So.2d 111 (1974). In that case, this Court had an opportunity to determine what the legislature intended when it used the words "where a vacancy may occur in any nomination" in § 17-16-41. In Foster v. Dickinson, cited in Harris v. Weatherford, the Democratic Party argued, and this Court agreed, that the word "vacancy" in that phrase was to be distinguished from a party's failure or omission to nominate in the primaries. The report of the case in 293 Ala. at 299, 302 So.2d 111 shows that the Democratic Party argued, in brief, that the words should be construed as the Florida Supreme Court had construed similar words of a Florida statute in State ex rel. Chamberlain v. Tyler, 100 Fla. 1112, 130 So. 721 (1930), a case which this Court cited in Foster v. Dickinson. See the synopsis of the brief of the Democratic Party in Foster v. Dickinson, 293 Ala. at page 299, 302 So.2d 111, which states that the party argued that this Court should follow the reasoning of the Florida court which held that: "... Thus the phrase `or if for any cause there is a vacancy in any nomination,' interpreted according to the doctrine just stated [ejusdem generis], means vacancies which may occur through death, removal, resignation, or other incapacity of a person theretofore nominated for such office in the primary election, as, for instance, by insanity, conviction of felony, etc." (Emphasis added.) The thrust of the party's argument in Foster v. Dickinson, as I read that argument, was that there had never been a nomination and, therefore, that there could be no "vacancy" under the terms of § 17-16-41. I agreed with the party's argument in that case, because I thought it correctly interpreted the provisions of § 17-16-41. I cannot agree with the argument made in this case, however, that somehow Megginson became the nominee and then ceased to be the nominee. He never became the nominee of the party, because he failed to comply with the requirements of law that govern the holding of primary elections in this State.
The effect of this Court's decision in Foster v. Dickinson is that § 17-16-41 deals with a "nomination," not with a candidacy. The sole issue in that case was what the legislature meant when it used the words "where a vacancy may occur in any nomination," the same issue that is *253 presented here. The Court, in that case, cited State ex rel. Chamberlain v. Tyler, 100 Fla. 1112, 130 So. 721 (1930), in which the Florida Supreme Court was called upon to construe similar language in a Florida statute. The Florida court construed the words "vacancy in nomination" as follows:
"A `vacancy in nomination' is to be distinguished from a failure or omission to nominate at the primaries. There can be no `vacancy in nomination' until there has first been a nomination. When no nomination has been made, there may be a vacancy on the party ticket for the general election, but there is no vacancy `in any nomination,' for there has been no nomination. The statute does not provide that, `if for any cause there is a failure or omission by any political party to designate a nominee in the primary,' then the executive committee may designate a nominee. If such had been the legislative intent, it would have been very easy to so provide."
(Emphasis added).
I could not say it better. It is clear to me that Megginson never became the nominee of the Democratic Party, and it is clear to me that there can be no vacancy in a nomination that never took place. The candidate here, Megginson, is in the same legal position as the candidates in Harris v. Weatherford, Herndon v. Lee, and Foster v. Dickinson. In short, it is my opinion that Megginson's status as the nominee of the Democratic Party in the primary election, and, therefore, his qualification to have his name placed on the general election ballot as the party nominee have been determined adversely to him, because of his omission to comply with the provisions of law governing primary elections. The party may have a vacancy on its ticket for the legislative post that he sought, but there was no vacancy in a nomination. In fact, the party's nominee has not yet been selected, and in this general election I do not believe one can be at this time because of the facts of this case. Consequently, I must respectfully dissent as to that portion of the opinion that would permit the Alabama Democratic Party to declare that a vacancy exists under the provisions of § 17-16-41.
NOTES
[1] Ala.Code 1975, § 17-22A-4, provides, in pertinent part:

"Within five days after any person becomes a candidate for office, such person shall file with the secretary of state or judge of probate, as provided in section 17-22A-9, a statement showing the name of not less than two nor more than five persons elected to serve as the principal campaign committee for such candidate, together with a written acceptance or consent by such committee, but any candidate may declare himself or herself as the person chosen to serve as the principal campaign committee, in which case such candidate shall perform the duties of chairman and treasurer of such committee...."
[1] Thomas Jefferson thought that each judge should write an opinion in every case so as to "throw himself in each case on God and country; both will excuse him for error and value him for honesty." The Dissent: A Safeguard of Democracy, 32 J.Am.Jud.Soc'y, 106 (1948).
[2] The majority states, "[W]e find nothing in the statute or in the cases cited by the appellee that prevents the Democratic Party's executive committee from exercising its prerogative to fill the vacancy by such a method as the committee `may see fit to pursue,'" citing Ala.Code 1975, § 17-16-41.
[3] The Court in Harris v. Weatherford affirmed an order of the trial court that had concluded, in part, as follows:

"The Court further concludes and declares that Thetford did not legally qualify as a candidate for the Republican nomination for such Judgeship and, therefore, there was no vacancy which could be filled by the Republican Party under § 16-16-41. Foster v. Dickinson, 293 Ala. 298, 302 So.2d 111 [(1974)]. Therefore, King's name should not be printed on the general election ballot. "ORDER AND JUDGMENT
"In accordance with the foregoing Findings of Fact and conclusions of Law, it is the ORDER and JUDGMENT of the Court that the Defendant Harris and Defendant Siegelman refrain from certifying the nomination of Cecil B. King as a nominee or candidate for the office of Judge of the District Court of Alabama for Mobile County, Place No. 1, or in the event either of them have issued such a certification prior to the issuance of this Order that they are hereby directed to withdraw or rescind such certification."
459 So.2d at 880.
[4] Although it does not appear from the report of the case, the facts in Harris v. Weatherford show that the candidate in that case who was held to have failed to comply with the election laws had been certified to the secretary of state as the Republican nominee. I examined the original record in that case; the subject candidate in that case (Thetford) was certified by the Republican Party to the secretary of state as the candidate for the judgeship to which he aspired. The record of that case shows in testimony by Marty Conners, executive director of the Republican Party, the following:

"Q. And after you received Mr. Thetford's papers and they were accepted by the state party, did the party then certify to Mr. Siegelman [secretary of state] their approval that Mr. Thetford was the candidate?
"A. Yes, sir, we did. On the 11th, I believe.
"THE COURT: Say that again. What did you do?
"MR. CONNERS: We sent this certification to the secretary of state certifying Joseph Thetford as [the candidate]."