When the legislature adopted the Fair Campaign Practices Act of 1988 ("FCPA") and repealed the Corrupt Practices Act (Chapter 22 of Title 17 of the Code of Alabama 1975), it intended to strengthen the laws relating to the reporting of campaign contributions. Although I concur in that part of the opinion holding that the action here is an "election contest," I cannot agree with the remainder of the opinion. The majority's interpretation of the Act, I believe, rewrites the plain words of the Act governing the reporting of campaign contributions. Consequently, I must respectfully dissent from that portion of the opinion.[4]
At first, I was of the opinion that the action filed here to seek revocation of a certificate of election was not an "election contest," and at first I thought that this action was not governed by the provisions *Page 557 
of Ala. Code 1975, § 17-15-22 (providing that a contest must be filed within 20 days "after the result of the election is declared,"), but after further study I have concluded that the legislature probably intended to place a 20-day limit upon actions seeking to have a certificate of election revoked. Consequently, I concur in the holding that the 20-day provision of § 17-15-22 applies.
I cannot agree with that portion of the opinion interpreting the reporting requirements of the new FCPA. I believe that the legislature, in passing the FCPA, intended to completely change the method of reporting campaign contributions and to correct an evil that had previously been permitted. Under the old law, a candidate could receive contributions, without reporting them, until he or she filed an official declaration of candidacy. As I read the FCPA, that is no longer permitted. I believe that the new FCPA makes a person a "candidate" when certain levels of contributions are received, or expenditures are made (§ 17-22A-2), whether the candidate has filed an official declaration of candidacy or not. That is precisely what Germany failed to do here. He was a "candidate," as a matter of law, before he filed his official declaration of candidacy.
Under the old Corrupt Practices Act, which was repealed by the FCPA, a "person" was not considered a "candidate" until an official declaration was filed. Under that law, a person could wait until the last day for qualifying to officially declare his candidacy and by doing so could receive substantial contributions without having to appoint a campaign committee or to report those contributions. Now, there are strict reporting procedures set out in the law. Ala. Code 1975, § 17-22A-8(a)(1).
The requirements of law regulating so-called "corrupt practices" in political elections have been strictly enforced. They were enforced against a candidate for the state senate who failed to file required forms with a probate judge, as required by law. Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966). They were enforced against a candidate for the state legislature who failed to file required forms with the probate judge. Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966). They were enforced against a member of a black political party (Greene County Freedom Organization), because, as was the case here, a candidate did not comply with statutory requirements by filing a statement declaring the name of the committee to receive and disburse campaign funds. Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967). They were enforced against a Democratic candidate for the State Board of Education who failed to file with the secretary of state the required statement regarding the appointment of his finance committee.Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (Ala. 1986). They were enforced just last year in Megginson v.Turner, 565 So.2d 247 (Ala. 1990), when this Court was faced with the identical legal question presented here, involving the identical statutes that are involved here. In Megginson, this Court stated that the provisions of § 17-22A-4 were "mandatory,"[5] and I can see no reason why that holding inMegginson, supported by substantial authority, should not be applied here. *Page 558 
The FCPA defines a "candidate" and compels a candidate to disclose his or her financial contributions, whether an official declaration of candidacy has been filed or not. The Act defines a "candidate" as follows:
"(1) CANDIDATE. An individual who has:
 "a. Taken the action necessary under the laws of the state to qualify himself or herself for nomination or for election to any state office or local office . . . or
 "b. Received contributions or made expenditures, or given his or her consent for any other person or persons to receive contributions or make expenditures, with a view to bringing about his or her nomination or election to any state office or local office. Provided, however, that no person shall be considered a candidate within the meaning of this subdivision until such time as he or she has either received contributions or expenditures as provided herein in the following amounts:
". . . .
 "3. One thousand dollars or more, with a view toward bringing about a nomination or election to any local office."
§ 17-22A-2. Because of the plain words of this statute, Germany was a "candidate" when he received contributions of more than $1,000. Under the provisions of the Act, Germany should have filed his declaration for candidacy at the time he reached the $1,000 threshold of campaign contributions for his election to the office of district one commissioner.[6] The law does not permit a candidate to determine when he or she becomes a "candidate." The law specifically states when that event occurs, and when it does the filing requirements are thereby triggered. A failure to comply with those mandatory requirements of the law has previously resulted in severe sanctions. Megginson, Kirksey, Herndon, Owens, and Jones, supra. In Megginson, this Court clearly declared that because Megginson had failed to comply with the filing requirements of the FCPA he could not be the Democratic nominee.[7] The majority recognizes that Megginson is direct authority, but now overrules Megginson. The reasoning in Megginson is sound. Megginson is not wrong.[8]
In holding that "[t]o the extent that Megginson v. Turner, . . . holds to the contrary, it is overruled," the majority has changed the law. The Court takes a step backward, rather than a step forward, thereby frustrating legislative intent rather than fostering it.
The majority shows this frustration of legislative intent when it construes the requirements of § 17-22A-21 as follows:
 "If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-21 applies the sanction: forfeiture of the election. If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-22(b) applies."
Opinion at 556. I believe that this holding by the Court misconstrues legislative intent. In my opinion, any elector can file an election contest to challenge the eligibility of any candidate to be certified as the nominee or the person elected at a general *Page 559 
election, provided that challenge is timely filed. I also believe that a willful failure of a candidate to comply with the provisions of the FCPA could result in a criminal prosecution under § 17-22A-22. In fact, I think a quo warranto action might be an appropriate remedy if such an action is commenced as provided by law. Ala. Code 1975, § 6-6-591.
What is especially disturbing about the majority's opinion is that it states that insofar as an election contest is concerned, it makes no difference when a candidate files the required forms regarding the naming of a principal campaign committee so long as the required papers are filed "before the election." The interpretation placed on the FCPA by the majority opinion could completely frustrate the very purpose of the FCPA to require "candidates" to file and report as soon as they became candidates. Ala. Code 1975, § 17-22A-8. This Court is without authority to vary those terms. The majority's attempt to distinguish the decisions in Jones, Owens, Herndon, and Kirksey on the ground that "the Corrupt Practices Act . . . did not provide the separate sanctions that the Fair Campaign Practices Act provides" seems to be based on a misconstruction of the Corrupt Practices Act. The Corrupt Practices Act provided for sanctions.[9]
This is the second time the candidate here has escaped the sanctions imposed by the FCPA. He escaped its sanctions in the primary election when this Court said it lacked jurisdiction.[10] He now escapes sanctions once again in the general election.
In the past, this Court has strictly applied the provisions of law against candidates for the state legislature and the state board of education, and I believe that the Court should apply the sanctions of the FCPA here. The provisions of the FCPA should be strictly applied, because its provisions are mandatory. Megginson, supra.
Had this challenge been filed within 20 days after the Commission certified Germany as the winner of the general election, I would hold that the Commission unlawfully issued Germany's certificate of nomination, and that it should have been revoked. Section 17-22A-21 states that a "certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked." Admittedly, this penalty set by the legislature is harsh, but the penalties applied in Jones, Owens, Herndon, Kirksey, andMegginson were also harsh. Based upon the foregoing, I disagree with those portions of the majority opinion interpreting the filing requirements and the sanction provisions of the FCPA. Had the challenge here been timely filed, I believe that the Commission would have had statutory authority to revoke Germany's unlawfully issued certificate; therefore, I respectfully dissent as to those portions of the opinion.
HOUSTON, J., concurs.
[4] Because the majority decides that the action was not timely filed, the portions of the opinion interpreting the provisions of the Fair Campaign Practices Act could be obiter dicta, but because the majority addresses the legal question, I also address it.
[5] In Megginson, the Court stated that, "[a]fter studying the record and the briefs of counsel and amicus curiae, [it concluded] that the trial court's ruling removing Megginson as a candidate [was] due to be affirmed, on the authority of the cases cited" in the following written order entered by the trial court:
 "[T]he Court finds that Ken Megginson filed his statement naming his principal campaign committee more than five days after he filed his announcement and declaration of candidacy, contrary to the requirements of Section 17-22A-4 of the Code of Alabama requiring that the statement be filed within five days. The provisions of Section 17-22A-4 are mandatory. Since Ken Megginson failed to comply, [he] may not be certified as the nominee of the Democratic Party for House District 102 and his name may not appear on the ballot for the general election. Section 17-22A-4 of the Code of Alabama, Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (Ala. 1986); Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967); Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966); Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966)."
565 So.2d at 248.
[6] Germany's April 20, 1990, summary of contributions reflects that he had raised over $1,000 toward his candidacy for county commission sometime prior to his official declaration of candidacy on April 4, 1990.
[7] I agreed with the majority in Megginson that the provisions of the FCPA were mandatory, but I did not agree that the Democratic Party, having failed to have a candidate nominated in the primary election, could fill the so-called "vacancy." See, Megginson, 565 So.2d at 249 (Maddox, J., dissenting).
[8] The opinion in Megginson does not show whether Megginson filed the required statement before the election, but the record inMegginson on file in this Court specifically shows that Megginson filed his declaration of candidacy with the secretary of state on April 6, 1990, but that he did not file the statement naming his principal campaign committee until April 17, 1990. The primary election was held on June 5, 1990. Megginson was unopposed in the Democratic primary. Consequently, the basic facts of Megginson are not different from the facts here and in the other cases cited in Megginson.
[9] Section 17-22-12 stated that a "certificate of election shall not issue" to a candidate who failed to file a statutorily required statement, and § 17-22-15 provided for criminal sanctions. Consequently, it appears to me that the sanctions in both the repealed Act and the new Act are basically the same.
[10] In Dunning v. Reynolds, 570 So.2d 668 (Ala. 1990), this Court affirmed a trial court's dismissal of the complaint because it lacked jurisdiction. That decision was, of course, wrong. SeeDunning, 570 So.2d 668, 669 (Maddox, J. dissenting). On this appeal, Davis argues that a penalty imposed upon him by the party could not preempt the authority and duty of the Commission to impose sanctions for violation of the FCPA; a candidate who has been unlawfully issued a certificate of election cannot circumvent the clear intent of the law by asserting that a political party's fine substitutes for the penalties established by the legislature. As I said in my dissent in the Dunning case, "To vest in a political party the absolute power to enforce the sanctions, in my opinion, fails to carry out legislative intent." 570 So.2d 668, 671. *Page 560