602 So.2d 357 (1992)
CITY OF TALLADEGA, et al.
v.
Clarence PETTUS.
1910418.
Supreme Court of Alabama.
July 24, 1992.
O. Stanley Thornton of Wooten, Thornton, Carpenter, O'Brien & Lazenby, Talladega, *358 for appellants City of Talladega, Horace L. Patterson, Sr., Donald F. Hubbard, Howard "Rip" Williams and James Spratlin.
Philip H. Smith, Talladega, for appellant Philip H. Barton.
George A. Monk of Merrill, Porch, Dillon & Fite, Anniston, for appellee Clarence Pettus.
PER CURIAM.
The issue in this case is whether the trial court had jurisdiction to revoke a certificate of election issued to the winner of a municipal election for mayor because of the candidate's failure to comply with the filing requirements of the Fair Campaign Practices Act relating to campaign contributions.
The basic facts are not seriously disputed. On July 16, 1991, Larry H. Barton announced his candidacy for the office of mayor of Talladega. The election was held on August 27, 1991. No candidate received a majority of the votes in that election; thus a second election, or "run-off," was necessary. That election was held on September 17, 1991.
On the day before the election, at approximately 4:00 p.m., Barton filed his campaign committee disclosure form and his statement of contributions and expenditures required by the Fair Campaign Practices Act ("FCPA"). This filing was not timely.[1] The run-off election was held on September 17, as scheduled. On the day after the election, the city council declared Barton the winner and issued him a certificate of election.
On September 23, 1991, five days after the results of the second election were declared, Clarence Pettus filed a contest of that second election, and he asked the trial court to revoke the certificate of election issued to Barton and to order a new election. Pettus's challenge to Barton's election was based on Barton's failure to comply with the FCPA requirement that he file his campaign committee form and his statement of contributions and expenditures within five days of declaring his candidacy.
The trial court, finding that Barton did not comply with the FCPA, ordered the city council to revoke Barton's certificate of election, relying on the provisions of Ala. Code 1975, § 17-22A-21. The city council filed a counterclaim in which it sought a court order to establish a procedure for electing a new mayor. The trial court responded by ordering the city to hold another election. Both the city and Barton appealed from the trial court's order revoking the certificate of election.
Two basic arguments are made by the city and Barton:
(1) Although Barton did not file his statement of contributions and expenditures as required by the FCPA, he did file them prior to the election; therefore, the trial court was without authority to order his certificate of election revoked. Davis v. Reynolds, 592 So.2d 546 (Ala. 1991).
(2) The FCPA does not authorize a court to revoke a certificate of election issued to the winning candidate in a municipal election, because no statute grants a court such authority.
The FCPA was enacted into law by the legislature in 1988. Ala.Acts 1988, No. 88-873, p. 397; Ala.Code 1975, § 17-22A-1 et seq. At the time the trial court revoked the certificate of election, this Court had decided Megginson v. Turner, 565 So.2d 247 (Ala.1990), a case involving provisions of the FCPA. In Megginson, this Court affirmed the trial court's holding that if a candidate failed to comply with the FCPA filing requirements, the candidate's name could not appear on the ballot for a general election. Megginson, 565 So.2d at 248. The trial court appears to have followed that case and the principles of law set out in it in ordering the certificate of election revoked because of the candidate's failure to strictly comply with the provisions of the FCPA.
*359 After the trial court made its decision, this Court decided Davis v. Reynolds, 592 So.2d 546 (Ala.1991), wherein this Court held that a candidate's certificate of election could not be revoked for noncompliance with the FCPA's filing requirements relating to campaign contributions and expenditures, so long as the candidate filed the required form or statement before the election. The Court, in Davis, specifically held as follows:
"All candidates are, of course, subject to the five-day requirements of § 17-22A-3. If one fails to file a statement required by that section before the election, § 17-22A-21 applies the sanction: forfeiture of the election. If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-22(b) applies. To the extent that Megginson v. Turner, supra, holds to the contrary, it is overruled."
On appeal, the City and Barton argue that, although Barton did not file the statements required to be filed by § 17-22A-4 within five days, he filed them before the election, and that, according to Davis, the court could not order his certificate of election revoked. They argue that, under Davis, Barton could be penalized only by the fine prescribed by statute. Ala.Code 1975, § 17-22A-22.
Pettus recognizes the holding in Davis. He argues that, in view of the holding in Davis, "the most honest and forthright approach to the issue raised in this appeal is for this appellee to state forthrightly his belief in the validity of the reasoning contained in Megginson." Pettus urges the Court to apply Megginson and hold that noncompliance with the filing requirements of the FCPA means revocation of Barton's certificate of election. He asks this Court to re-evaluate its reading of the FCPA so as to provide the civil forfeiture sanction against a candidate who has not substantially complied with the filing requirements of the Act, in order to prevent a "gross" abuse of its mandates.
After reading the briefs of the parties and after considering the oral arguments, we conclude that the issue presented in this case can be decided without addressing the question whether the trial court could have revoked the certificate of election on the basis that Barton's noncompliance with the FPCA was "gross." It appears to us that a jurisdictional question is presented as to whether the trial court, under the provisions of § 17-22A-21, had the power to revoke the certificate of election issued to Barton by the city council.
A court does not have the jurisdiction to interfere in an election result, unless a statute authorizes it to do so. Ala. Code 1975, § 17-15-6, divests courts of such jurisdiction. That statute provides, in pertinent part:
"No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute ..."
This Court, in Turner v. Cooper, 347 So.2d 1339, 1346 (Ala.1977), said that "[c]ontests of elections are statutory creations, except insofar as we have noted, and the statutory requirements must be strictly complied with" (citations omitted).
Is a trial court authorized, by statute, to revoke a certificate of election issued to a winning candidate in a municipal election? We think not. A court can prevent the issuance of a certificate of election to a municipal office, but, once the certificate is issued, the court is without authority to revoke it. Section 17-22A-21 states:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
(Emphasis added.)
The first sentence in the statute gives the Court the express power to prevent the *360 issuance of a certificate of election to any person nominated to a "state or local office," which is defined by § 17-22A-2(7) as "[a]ny office under the constitution and laws of the state, except circuit, district or legislative offices, filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality," but the second sentence of § 17-22A-21 omits the term "local office" and substitutes instead the term "county office." It seems clear that the legislature deliberately made no provision for the revocation of a certificate of election in a municipal election.[2] This Court, therefore, has no alternative but to hold that the legislature intentionally did not authorize the revocation of a municipal certificate of election.
It appears to us that, in view of the specific provisions of law prohibiting courts from interfering with elections unless specifically authorized by statute to do so, the legislature intended for the provisions of law relating to annulment of municipal elections to be the sole authority under which courts could act. Section 11-46-69 sets out the grounds on which municipal elections may be challenged:
"(a) The election of any person declared elected to any office of a city or town may be contested by any person who was at the time of the election a qualified elector of such city or town for any of the following causes:
"(1) Misconduct, fraud or corruption on the part of any election official, any marker, the municipal governing body or any other person;

"(2) The person whose election to office is contested was not eligible thereto at the time of such election;
"(3) Illegal votes;
"(4) The rejection of legal votes; or
"(5) Offers to bribe, bribery, intimidation or other misconduct calculated to prevent a fair, free and full exercise of the elective franchise.
"(b) Any contest of such an election must be commenced within five days after the result of the election is declared. Such contest shall be instituted in the manner prescribed in section 17-15-29 and except as otherwise provided in this article, all proceedings relative to contests of elections to municipal offices shall be governed by the provisions of articles 2 and 3, chapter 15, Title 17 of this Code."
(Emphasis added.) See, Blocker v. City of Roosevelt City, 549 So.2d 90 (Ala.1989); Ex parte Vines, 456 So.2d 26 (Ala.1984).
We recognize that the statute provides that a municipal election can be annulled because of the "[m]isconduct, fraud or corruption on the part of any election official, any marker, the municipal governing body or any other person," but we do not think that the words "misconduct, fraud or corruption ... of any other person" are broad enough to cover a failure to timely file campaign disclosure forms under the FPCA, for which sanctions are imposed under the provisions of § 17-22A-21.
Based on the above, we hold that, under the provisions of § 17-22A-21, the court did not have the jurisdiction to revoke the certificate of election issued to Barton. Had Pettus filed the action before the certificate was issued or if he had challenged Barton's noncompliance with the provisions of the FCPA before the election, then the court would have had jurisdiction to grant whatever relief was appropriate.[3]
We now address the trial court's order annulling the election and ordering a new election. The power of a court to annul an election is very limited. Section 11-46-71 provides:

*361 "No misconduct, fraud or corruption on the part of the election officers, the marker, the municipal governing body or any other person, nor any offers to bribe, bribery, intimidation or other misconduct which prevented a fair, free and full exercise of the elective franchise can annul or set aside any municipal election unless the person declared elected and whose election is contested shall be shown not to have received the requisite number of legal votes for election to the office for which he was a candidate thereby, nor must any election contested under the provisions of this article be annulled or set aside because of illegal votes given to the person whose election is contested unless it appears that the number of illegal votes given to such person, if taken from his would reduce the number of votes given to him below the requisite number of votes for election. No election shall be annulled or set aside because of the rejection of legal votes unless it appears that such legal votes, if given to the person intended, would increase the number of his legal votes to or above the requisite number of votes for election."
A municipal election can be annulled only when the act complained of directly affected the result of the election. An act directly affects the result of an election when there is "proof of illegal votes, proof of rejected legal votes, or proof of the failure of the contestee to receive the requisite number of legal votes." Blocker, 549 So.2d at 92. See Turner, 347 So.2d at 1344; 29 C.J.S. Elections § 249 (1966).
The facts in Turner v. Cooper, supra, are similar to the facts in the present case. In Turner, the City of Prichard's election for the office of mayor was contested by the losing candidates. The plaintiffs alleged that the defendant had "`fraudulently and willfully disposed of challenged ballots.' " Turner, 347 So.2d at 1344. The trial court dismissed the action and this Court affirmed. This Court stated:
"The annulment of elections under Tit. 37, § 34(69) [presently Ala.Code 1975, § 11-46-71] requires either proof of illegal votes, rejected legal votes, or the failure of the contestee to receive the requisite number of legal votes. In other words, other instances of election law violations under § 34(69) may not be used to annul or invalidate a municipal election.... [The plaintiffs' allegation] is an allegation of fraudulent malconduct, but it does not charge either of the three grounds for annulment listed under § 34(69). Errors and irregularities of election officers which are shown not to affect the election result will not be considered in a municipal election contest, otherwise legal voters would be deprived of their franchise."
Turner, 347 So.2d at 1345 (emphasis original).
We, therefore, hold that the trial court did not have the jurisdiction to either revoke the certificate of election or annul the election.
The judgment of the trial court is reversed and a judgment is rendered for the appellants.
REVERSED AND JUDGMENT RENDERED.
MADDOX and HOUSTON, JJ., concur specially.
HORNSBY, C.J., and SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur in the result.
MADDOX, Justice (concurring specially).
I concur in the majority opinion, because I agree that the trial court was without jurisdiction to revoke a certificate of election in a municipal election. It seems plain to me that the legislature specifically made a distinction between the power of a court to prevent the issuance of a certificate of election and the power to revoke a certificate of election, and that a court cannot interfere with an election unless specifically authorized by statute to do so. I also agree with the Court that this appeal can be decided without addressing the question of whether Davis v. Reynolds, 592 So.2d 546 (Ala.1991), applies. I would point out, however, that the facts of this case graphically display why I thought the Court misinterpreted *362 the provisions of the FCPA in Davis. I still firmly believe that the penalty provisions of § 17-22A-21 and of § 17-22A-22 apply when a candidate fails to comply with the provisions of the FCPA. As I said in my dissent in Davis, I believe that the legislature, in passing the FCPA, intended to completely change the method of reporting campaign contributions so as to prohibit practices that were permitted under the old Corrupt Practices Act. I reiterate what I said in my dissent in the Davis case: "The interpretation placed on the FCPA by the majority opinion could completely frustrate the very purpose of the FCPA to require `candidates' to file and report as soon as they became candidates." Davis, 592 So.2d at 559. I believe that Barton's actions in filing the required papers at 4:11 p.m. on the day before the election are a good example of the frustration that I mentioned.
When and if the Court is presented with a case in which it can re-evaluate its holding in Davis, I hope that it will do so. I believe that the Court, in Davis, essentially rewrote the penalty provisions of §§ 17-22A-21 and 17-22A-22. The majority in Davis found that the only penalty for a candidate who failed to timely file, yet filed prior to the election, was a criminal fine. Id. at 555-56. The majority rationalized that the imposition of both civil and criminal sanctions on a candidate is "too harsh." This Court stated:
"After all, this candidate is the candidate chosen by the people as their representative, even though his disclosure statement was filed untimely. The people's choice should prevail even if the candidate is in violation of the time constraints of the statute, if he files his disclosure statements prior to the election."
Id. at 555.
I believe that the legislature, in passing the FCPA, intended that every candidate disclose campaign contributions and expenditures within the time limits set out in the statute. I think that this Court, in Davis, has rewritten the FCPA.
Here, however, I think that the legislature has made it clear that it wants municipal offices treated differently from "state and county" offices insofar as revocation of a certificate of election is concerned. Consequently, I concur in the opinion.
HOUSTON, J., concurs.
NOTES
[1] Ala.Code 1975, § 17-22A-4, required that the filing be made within five days after he declared his candidacy.
[2] The interpretation we make seems to comport with the synopsis of the FCPA that was sent to municipalities by the Alabama League of Municipalities. See Smith, The Fair Campaign Practices Act, 47 Ala.Mun.J. 27 (Dec. 1989), wherein the author points out that a court can prevent the issuance of a certificate, but makes no mention of any power of a court to revoke one already issued.
[3] Under Davis, the only penalty for failing to comply with the FCPA is found in § 17-22A-22, which imposes criminal penalties for failing to comply with the FCPA.