The election-contest provisions that have been enacted by the Alabama Legislature comprise Chapter 15 of Title 17 of the Alabama Code.[12] Section 17-22A-21, Ala. Code 1975, is part of the separately enacted Fair Campaign Practices Act, comprising Chapter 22A of Title 17 of the Code. I am not persuaded that an action brought under § 17-22A-21 must be, or even can be, brought as an election contest under Chapter 15.
First, I see nothing in § 17-22A-21 or any other provision of the Fair Campaign Practices Act that purports to require that an action brought thereunder must be *Page 482 
brought under the provisions of our election-contest statutes. Section 17-22A-21 provides simply that
 "[a] certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
In adopting this provision, the legislature created duties on the part of election officials regarding the issuance and revocation of certificates of election under certain circumstances. Likewise, the legislature in adopting this provision created certain rights in the public, in individual electors, and in candidates. The statute appears to be enforceable by way of actions brought by or against those election officials, actions by the attorney general or other appropriate law-enforcement authorities, and actions by candidates and individual electors. The election-contest provisions of Chapter 15, however, expressly provide only that election contests will be filed by "electors." See
Ala. Code 1975, § 17-15-20 (as to general elections) (now § 17-16-47); § 17-16-78(a) (as to primary elections) (now § 17-13-78). Also, as discussed in more detail hereinafter, the focus of the election-contest statutes is on challenges to certified election results, whereas § 17-22A-21 expressly contemplates an action to prevent the issuance of a certification in the event the candidate does not comply with the Fair Campaign Practices Act.
Again, § 17-22A-21 creates certain rights. For aught appearing from that statute, those rights and duties are subject to enforcement in the circuit courts of this State without the necessity of an additional statutory provision explicitly so providing. See generally Art. VI, § 142(b), Ala. Const. 1901 (Off.Recomp.) ("The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law."); King v. Campbell,988 So.2d 969 (Ala. 2007); Dennis v. Prather, 212 Ala. 449,103 So. 59 (1925). In this regard, § 17-22A-21 is no different than countless other statutes that have been adopted by our legislature unaccompanied by any such explicit provision.[13]
Similarly, I see nothing in the election-contest provisions of Chapter 15 stating that an action brought pursuant to § 17-22A-21 must be brought as an election contest.
Section 17-15-6 states:
 "No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any *Page 483 
judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person;
and should any judge or other officer hereafter undertake to fine or in any wise deal with any person for disobeying any such prohibited injunction, process or order, such attempt shall be null and void, and an appeal shall lie forthwith therefrom to the supreme court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be 14 days."
(Emphasis added.)
Section 17-22A-21 does provide a "specially and specifically enumerated" statutory basis for preventing or causing the revocation of a certificate of election. I see nothing in § 17-5-6, however, that requires all causes of action "specially and specifically enumerated and set down by [a] statute" outside the election-contest statutes to be prosecuted under those election-contest statutes. In other words, § 17-15-6
appears to prohibit common-law actions regarding election matters by providing that only statutory actions will be allowed. Section 17-15-6 does not appear to mandate that all statutory actions necessarily must be brought as election contests.
It is true that, in Harvey v. City of Oneonta,715 So.2d 779 (Ala. 1998), this Court stated that the contestant there, seeking to pursue a claim under the Fair Campaign Practices Act, should have filed an election contest. TheHarvey Court cited no persuasive authority for this proposition, however.[14] The case primarily relied upon inHarvey for the assertion that the challenge under the Fair Campaign Practices Act should have been filed as an election contest was Davis v. Reynolds, 592 So.2d 546
(Ala. 1991). I find the reasoning of Davis v. Reynolds
on this point to be unpersuasive.[15] *Page 484 
The Court in Davis reasoned as follows: When the legislature replaced the former Corrupt Practices Act (which previously had been set out in Chapter 22 of Title 17) with the Fair Campaign Practices Act, it did not amend the statute-of-limitations provision found in Chapter 15 of Title 17, specifically, § 17-15-22, for election contests. Because of this, according to the Davis Court, the legislature must have intended that the statute of limitationscontinued to apply to actions brought under the Fair Campaign Practices Act. 592 So.2d at 554. The Court provided no authority, however, for its foundational assumption that the statute of limitations for election contests in Chapter 15 was ever in fact applicable to actions brought under the Corrupt Practices Act. The Court just asserted that it was. Nothing in the statute prescribes as much, and, as discussed hereinafter, the precedents of this Court before Davis stood for the contrary proposition.
Early on in the history of the statutes at issue, the Supreme Court offered the following explanation in Beatty v.Hartwell, 217 Ala. 239, 240, 115 So. 164, 165 (1927):
 "Section 545 of the Code of 1923[, a precursor to § 17-15-1 of the election-contest statutes,] sets forth the grounds upon which the office of probate judge may be contested, and ground (2), the only one having any bearing upon this case, says: "When the person whose election is contested was not eligible thereto at the time of said election.' This means when the person was incompetent or disqualified at the time of the election, and not when he became disqualified because of illegal or improper conduct in and about the election. Finklea v. Farish, 160 Ala. 230, 49 So. 366 [(1909)]. In other words, a candidate may be eligible to the office the day of the election, but on that day may do some act in violation of the Corrupt Practice[s] Act as would disqualify him from assuming or holding the office. True, section 587 of the Code[, part of the Corrupt Practices Act,] provides that the conduct as set up in [the complaint] shall constitute a violation of the act and shall disqualify the candidate for said office. But this does not mean that it rendered him not eligible as a candidate on the day of the election within the meaning of ground (2) in section 545 of the Code.
We therefore hold that [the complaint] failed to set up a ground for contest as provided by sections 1884 and 545 of the Code of 1923. If the contestee violated the Corrupt Practice[s] Act so as to become disqualified under [that Act], he should be removed by some method other than a contest of the election. Watters v. Lyons, 188 Ala. 52[5], 66 So. 436 [(1914)]."
(Emphasis added.)
As in Beatty, the only provision of the election-contest statutes that has any bearing on the question before us is § 17-15-1(2), which provides for an election contest "[w]hen the person whose election to office is contested was not eligible thereto at the time of the election." Although Beatty was decided under the Corrupt Practices Act, the Court's analysis as to whether a candidate's misconduct under that Act goes to the candidate's "eligibility" to hold office within the meaning of the precursor to § 17-15-1(2) appears to apply with no less force to the Fair Campaign Practices Act. *Page 485 
Bolstering the reasoning provided in Beatty is the fact that election contests under Chapter 15 of Title 17 are, by their nature, contemplated to be contests of certifiedelection results. For example, § 17-15-1 begins by stating that "[t]he election of any person declaredelected" to the certain offices may be contested. Section 17-22A-21, on the other hand, specifically provides that a violation of that provision of the Fair Campaign Practices Act will constitute a basis for preventing the issuance of acertificate of election to the candidate. The design of § 17-22A-21 to prevent even the issuance of a certificate of election implies a separate quo warranto action, mandamus petition, or "some method other than a contest of the election," as concluded in Beatty.
Because I am not persuaded of the necessity of bringing an action under § 17-22A-21 as an election contest, I respectfully must dissent from the main opinion's dismissal of the appeal in this case. I would add, however, that the practical outcome achieved by the trial court's judgment and by the main opinion on appeal would appear to be just. The Ropers' challenge to Rhodes's certification as the nominee of the Democratic party for the office of Crenshaw County Board of Education member was filed over two months after the primary election and only eight days before the general election. This delay, coupled with the apparent prejudice to the parties and to the orderly conduct of the general election itself that would result if the primary election were to be undone at such a late date, compels a ruling in Rhodes's favor on the ground of laches.[16]
[12] References to statutory provisions are to the statutes in effect at the time of, and that govern, the acts and omissions at issue in this case. See note 2 in the main opinion.
[13] In Bostwick v. Harris, 421 So.2d 492
(Ala. 1982), for example, the issue presented on appeal was whether the circuit court had jurisdiction over an action seeking a declaratory judgment or, in the alternative, a writ of mandamus, and a request for injunctive relief to enforce the rights and duties created by Ala. Code 1975, § 17-16-21
(prohibiting the same person from being a candidate for more than one State office of the same classification). That statute, like § 17-22A-21, merely proscribes certain conduct and, in so doing, creates rights on the part of electors, such as those who brought the action; it contains no provision specifically authorizing the circuit court to entertain actions in equity to enforce those rights and proscriptions. Yet the Bostwick Court held that the circuit court had jurisdiction over the action as brought, while at the same time specifically stating that the matter before it was "not an election contest case."421 So.2d at 493.
[14] Three of the four cases relied upon by theHarvey Court are distinguishable from the present case, either because they involved no "specially and specifically enumerated" statutory basis for the relief requested, see Ex parte Baxley, 496 So.2d 688
(Ala. 1986), and Turner v. Cooper, 347 So.2d 1339
(Ala. 1977), or because they involved a failure to exhaust administrative remedies, see Dunning v. Reynolds,570 So.2d 668 (Ala. 1990).
[15] I also find questionable the holding in Davis
that a candidate who files the forms required by the Fair Campaign Practices Act before the election, even though he or she does not file them at the time required by the statute, is not subject to the sanctions prescribed in § 17-22A-21. The phrase "before the election" is nowhere found in § 17-22A-21.
Less than five months before it released the decision inDavis v. Reynolds, this Court decided the case ofMegginson v. Turner, 565 So.2d 247 (Ala. 1990).Megginson, together with the several cases cited by it as authority, indicates that a failure to file a statement required by the Fair Campaign Practices Act within the time prescribed by that Act is tantamount to a failure to file under the Act.
Further, I am at a loss as to how the filing of the required disclosure forms beyond the prescribed statutory deadline — say, for example, late in the day on the eve of the election — necessarily serves to "carry out the legislative intent of full disclosure before the election," as the majority in Davis concluded. 592 So.2d at 555.See City of Talladega v. Pettus, 602 So.2d 357, 362
(Ala. 1992) (Maddox, J., concurring specially, joined by Houston, J.) (reiterating his position in Davis v.Reynolds, 592 So.2d at 556-59 (Maddox, J., dissenting), that the interpretation placed on the Fair Campaign Practices Act by the majority in Davis "essentially rewrote the penalty provisions of § 17-22A-21 and 17-22A-22" in a way that "`could completely frustrate the very purpose of the [Fair Campaign Practices Act],'" and expressing his hope that "[w]hen and if the Court is presented with a case in which it can reevaluate its holding in Davis, . . . it will do so").
[16] I also note that the parties have not argued or briefed to this Court the issue whether we should overturnDavis.