689 So.2d 799 (1997)
Ex parte Bert P. KRAGES.
(Re Thomas A. CARDER, et al. v. CITY OF ORANGE BEACH, et al.).
Thomas P. CARDER, et al.
v.
CITY OF ORANGE BEACH.
Bert P. KRAGES
v.
Thomas A. CARDER, et al.
1952161, 1960063 and 1960114.
Supreme Court of Alabama.
February 7, 1997.
*801 L. P. Sutley and Spencer of E. Davis of Murchison & Sutley, L.L.C., Foley; and P. David Matheny of Bishop & Matheny, P.C., Bay Minette, for Thomas P. Carder, et al.
Algert S. Agricola, Jr., and Charles B. Campbell of Wallace, Jordan, Ratliff & Brandt, L.L.C., Montgomery; and Gregory L. Leatherbury, Jr., and Bryan A. Thames of Hand, Arendall, L.L.C., Mobile, for Bert Krages.
J. Patrick Courtney III and William E. Screve, Jr., of Lyons, Pipes & Cook, P.C., Mobile, for City of Orange Beach.
C. Bennett McRae, Gulf Shores, for Haywood Baker.
Charles C. Partin, Circuit Judge, Bay Minette, pro se.
PER CURIAM.
These cases arise out of an election contest commenced in the Baldwin County Circuit Court challenging the results of a municipal election in the City of Orange Beach. More specifically, they arise out of a runoff election held on September 17, 1996, to choose members of the city council of the City of Orange Beach ("the City") and to choose between Bert Krages and Jerry Davidson for mayor.
On September 23, 1996, Thomas A. Carder, Anne M. Douglas, V.L. Arnold, Gerald Davidson, Stuart Gilliam, and Mike Reilly, residents and electors of the City, filed a three-count complaint initiating the contest. The individual defendants were Bert Krages, candidate for mayor, and Haywood Baker, candidate for city council, Place Two.[1] Other defendants were the City, the city council, and the Mayor.
Count One alleged that certain absentee ballots cast for Krages "should not have been counted in determining the [mayoral] election..., because ... the electors were either unqualified, or the ballots were not properly executed." Count Two alleged that "in accordance with Ala.Code § 11-46-69 and the provisions of the `Fair Campaign [Practices] Act,' [Ala.Code 1975, §§ 17-22A-1 to -23]... Krages ... and Baker were not eligible *802 candidates for the offices for which they ran..., because they failed to properly file the appropriate reports of `contributions and expenditures' as required by Ala.Code § 17-22A-8." Count Three alleged that "illegal votes were counted in determining the winner[s] of the election" for mayor and members of the council.
By October 1, 1996, the city council had not certified the election results or issued a certificate of election. On September 30, 1996, Krages filed an answer, which included, as a cross-claim, a petition for a writ of mandamus directing the city council to certify him as the winner of the mayoral election. The same day, Circuit Judge Pamela Baschab issued a writ of mandamus, writing and holding in pertinent part:
"1. The run-off election for the office of mayor and for three seats on the City Council of the City of Orange Beach, Alabama was held on September 17, 1996;
"2. In accordance with Ala.Code § 11-46-55..., the City Council, having assembled a quorum, met on September 18, 1996, to canvass the results of the runoff election;
"3. The City Council failed to canvass the results of the election and has still not done so;
"4. There is reason to believe that the City Council will not act as required and it is necessary and appropriate that the court assume jurisdiction and issue its writ of mandamus as requested;
"Therefore, it is hereby ORDERED, ADJUDGED AND DECREED that the writ of mandamus be and [it] is hereby issued to the City Council of the City of Orange Beach, Alabama as follows:
"1. That the City Council assemble at 4:45 p.m. on Tues[day] Oct. 1, 1996 at City Hall in Orange Beach, Alabama and promptly canvass the results of the run-off election held on September 17, 1996 for the office of mayor and city council members without regard to any alleged irregularities in the conduct of the election and in precise concurrence with the returns of the inspectors for both the polling place and the absentee ballot box;
"2. Thereafter, the City Council shall forthwith issue a certificate of election to the candidate in each race who received the most votes and immediately file a copy of each certificate of election in the office of the Baldwin County Probate Judge as required by law;
"3. A copy of the resolution canvassing the results of the election and a copy of each certificate of election is to be filed with the clerk of this court in this action contemporaneously with the filing of the certificates of election in the Baldwin County Probate Judge's office;
"4. It is this court's intention that the City Council shall do nothing to inquire [into] or to investigate election irregularities or fraud or to determine the legality of any votes. There is pending in this court an election contest in which any such allegations will be determined after a full and fair hearing to all parties."
On October 1, 1996, before the city council had complied with the writ, Judge Baschab recused, in response to a motion by the plaintiffs, and the action was reassigned to Judge Charles C. Partin. On that same day, Judge Partin issued an order stating in pertinent part:
"1. The Writ of Mandamus dated September 30, 1996, shall remain in effect in that the City Council shall assemble at 4:45 P.M. on October 1, 1996, or as soon as possible after teleconference is completed, and promptly canvass the results of the run-off election held on September 17, 1996, for the office of Mayor and City Council members without regard to any alleged irregularities in the conduct of the election and in precise concurrence with the returns of the inspectors for both the polling place and the absentee ballot box; and
"2. Thereafter, the City Council shall forthwith issue a certificate of election to each candidate who received the most votes in his or her race in all races except the office of Mayor and council member place 2.

"3. The City shall withhold certification of a candidate in the two races, i.e., the Mayor's race and the race for Council *803 member place number 2, which shall be the subject of a hearing before this Court at 2:30 o'clock P.M. at the Baldwin County Courthouse in Bay Minette, Alabama, on the 3rd day of October, 1996."
(Emphasis added.)
Judge Partin heard oral argument on October 3, 1996, and, on October 4, 1996, granted the contestants' "motions for a judgment on the pleadings" as to Krages and ordered the city council "to convene before October 7, 1996, and issue a certificate of election to Jerry Davidson in the mayoral race due to the disqualification of ... Krages." Judge Partin also ordered the City council to issue a certificate of election to Baker for Place Two on the city council. He certified the judgment as final, pursuant to Ala. R. Civ. P. 54(b).
Also on October 4, Krages filed in this Court an "Emergency Petition for Writ of Mandamus," asking this Court to direct Judge Partin to "withdraw his order ... commanding the City Council of Orange Beach ... to issue a certificate of election to... Jerry Davidson." On October 5, 1996, the city council met and issued a certificate of election to Davidson and scheduled his investiture for 7:30 p.m. on October 7. On October 7, Krages filed in this Court a "Motion for Leave to File Amended Emergency Petition for Writ of Mandamus," in which he "requested that the swearing in be prevented from taking place." However, on October 7, Davidson took the oath of office as scheduled.
The plaintiffs and Krages appealed and cross-appealed, respectively, the October 4 judgment. Krages's mandamus petition is case 1952161; the plaintiffs' appeal is case 1960063; and Krages's cross-appeal is case 1960114.

I. Krages's Mandamus Petition
The respondentsJudge Partin, the City, and the plaintiffscontend that the writ of mandamus should not issue because, they insist, the requisites for the extraordinary writ are not present. Those requisites are: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) a lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Martin, 598 So.2d 1381, 1383 (Ala.1992). In particular, the respondents argue that Krages had "another adequate remedy," namely, the right to appeal the judgment.
As to this third requisite, we have stated:
"Mandamus will not issue when there is an adequate remedy by appeal, and a writ cannot be used as a substitute for appellate review. Ex parte Brooks, 572 So.2d [409, 411 (Ala.1990)]; see Ex parte Fowler, 574 So.2d 745, 747 (Ala.1990); Ex parte Furnace & Corrosive Services, Inc., 418 So.2d 891, 893 (Ala.1982). Generally, the writ will not be granted if the matter complained of can be raised on appeal. Ex parte Furnace & Corrosive Services, 418 So.2d at 893. The test to be applied in deciding whether the writ of mandamus should be granted is whether an appeal would provide an adequate remedy. Id."
598 So.2d at 1383 (emphasis added).
Krages, however, insists that the third requisite is met here, because of City of Talladega v. Pettus, 602 So.2d 357 (Ala.1992), which stated: "A court can prevent the issuance of a certificate of election to a municipal office, but, once the certificate is issued, the court is without authority to revoke it." Id. at 359. In his mandamus petition, Krages stated: "[I]f the City Council meets and issues the certificate of election to candidate Jerry Davidson, Petitioner Krages ... will be deprived of any remedy if it is subsequently determined that the order [to certify Davidson] should not have been issued."
Also, the City contends that Pettus is inconsistent both with caselaw and with statutes governing the duties of municipal governing bodies in municipal elections. The City requests that this Court define or clarify the procedure that must be followed in this case and in subsequent cases. We acknowledge this inconsistency and we take this opportunity to revisit Pettus.
Pettus arose out of the following facts:
"On July 16, 1991, Larry H. Barton announced his candidacy for the office of mayor of Talladega. The election was held *804 on August 27, 1991. No candidate received a majority of the votes in that election; thus a second election, or `run-off,' was necessary. That election was held on September 17, 1991.
"On the day before the election, at approximately 4:00 p.m., Barton filed his campaign committee disclosure form and his statement of contributions and expenditures required by the Fair Campaign Practices Act (`FCPA'). This filing was not timely. The run-off election was held on September 17, as scheduled. On the day after the election, the city council declared Barton the winner and issued him a certificate of election.
"On September 23, 1991, five days after the results of the second election were declared, Clarence Pettus filed a contest of that second election, and he asked the trial court to revoke the certificate of election issued to Barton and to order a new election. Pettus's challenge to Barton's election was based on Barton's failure to comply with the FCPA requirement that he file his campaign committee form and his statement of contribution and expenditures within five days of declaring his candidacy.
"The trial court, finding that Barton did not comply with the FCPA, ordered the city council to revoke Barton's certificate of election, relying on the provisions of Ala.Code 1975, § 17-22A-21. The city council filed a counterclaim in which it sought a court order to establish a procedure for electing a new mayor. The trial court responded by ordering the city to hold another election. Both the city and Barton appealed from the trial court's order revoking the certificate of election."
602 So.2d at 358 (footnote omitted).
This Court reversed the judgment of the trial court and rendered a judgment in favor of Barton. In doing so, it discussed a number of issues pertinent to this case. In particular, it discussed Ala.Code 1975, § 17-22A-21, which provides:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
(Emphasis added.) Discussing this section, the principal opinion in Pettus stated:
"The first sentence in the statute gives the Court the express power to prevent the issuance of a certificate of election to any person nominated to a `state or local office,' which is defined by § 17-22A-2(7) as `[a]ny office under the constitution and laws of the state, except circuit, district or legislative offices, filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality,' but the second sentence of § 17-22A-21 omits the term `local office' and substitutes instead the term `county office.' It seems clear that the legislature deliberately made no provision for the revocation of a certificate of election in a municipal election."
602 So.2d at 359-60 (two Justices concurring and five Justices concurring in the result) (footnote omitted). The principal opinion then proposed:
"[U]nder the provisions of § 17-22A-21, the court did not have the jurisdiction to revoke the certificate of election issued to Barton. Had Pettus filed the action before the certificate was issued or if he had challenged Barton's noncompliance with the provisions of the FCPA before the election, then the court would have had jurisdiction to grant whatever relief was appropriate."
602 So.2d at 360 (two Justices concurring and five Justices concurring in the result) (footnote omitted). The Pettus "rule" thus turns, in effect, on the omission in the statute's second sentence of the word "local" or a synonym more precise than the word "county."[2]
We acknowledge "the rule on omitted words," which compels this Court to "proceed *805 with great caution in supplying [omitted words] and [to] do so only where the omission is `palpable.'" Pace v. Armstrong World Indus., Inc., 578 So.2d 281, 285 (Ala. 1991). But we also recognize the "rule of statutory construction that where it appears from the context that certain words have been inadvertently omitted from a statute, the court may supply such words as are necessary to complete the sense, and to express the legislative intent." Walker v. Kilborn, 46 Ala.App. 695, 699, 248 So.2d 736, 738-39 (Ala.Civ.App.1971).
Ascertainment of legislative intent is, of course, the object of statutory construction. Langham v. State, 662 So.2d 1201 (Ala. Crim.App.1994). However, "`If a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the legislature intended that which is workable and fair.'" Ex parte Hayes, 405 So.2d 366 (Ala.1981) (quoting State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 233-34, 66 So.2d 726, 731 (1953)). (Emphasis added.) For the following reasons, we conclude that Pettus's construction of § 17-22A-21 is unworkable.
The duty to canvass election returns and certify a winner is ministerial in nature. Roe v. Mobile County Appointment Bd., 676 So.2d 1206, 1249 (Ala.1995) (Cook, J., concurring specially); Sears v. Carson, 551 So.2d 1054, 1056 (Ala.1989); Cosby v. Moore, 259 Ala. 41, 46, 65 So.2d 178, 181 (1953); Ex parte Pollard, 251 Ala. 309, 313, 37 So.2d 178, 182 (1948); Hudmon v. Slaughter, 70 Ala. 546, 550 (1881). In discharging this duty, a city council is forbidden to "`go behind [the election returns] or inquire into fraud or irregularity.'" Sears, 551 So.2d at 1056.
The procedure to be followed in performing this duty is correctly and aptly illustrated in the circuit court's September 30, 1996, writ of mandamus, which directed the city council (1) "promptly [to] canvass the results ... without regard to any alleged irregularities in the conduct of the election and in precise concurrence with the returns of the inspectors for both the polling place and the absentee ballot box"; and, having done so, (2) "forthwith [to] issue a certificate of election to the candidate in each race who received the most votes and immediately file a copy of each certificate of election in the office of the Baldwin County Probate Judge as required by law." The "law" that compels this procedure is Ala.Code 1975, § 11-46-55(a). Specifically, it requires a "municipal governing body" to canvass election returns "[n]ot later than 12:00 noon on Wednesday after the election." (Emphasis added.) At that time, "[i]f it appears that any candidate ... has received a majority of the votes cast for that office ..., the municipal governing body" must, forthwith, issue that candidate a certificate of election. Id. Just as significantly, as the September 30 order correctly illustrates, the legislature did not authorize the city council to "inquire [into] or to investigate election irregularities or fraud or to determine the legality of any votes." Thus, the city council is invested, not with discretionary power as an adjudicatory tribunal, but only with a clearly defined, nondiscretionary dutythe duty to certify election results.
The legislature, itself, sought to ensure the strict performance of this duty through the imposition of criminal sanctions for its nonperformance. Specifically, Ala. Code 1975, § 11-46-59(c), subjects to a minimum fine of $100 "[a]ny mayor or other chief executive [municipal] officer ... who willfully and knowingly neglects, fails or refuses to perform any of the duties prescribed." However, because the certification of municipal election winners is a clearly defined, nondiscretionary duty, performance may also be compelled by a writ of mandamus. Cosby, 259 Ala. at 46, 65 So.2d at 182; Ex parte Pollard, 251 Ala. at 313, 37 So.2d at 182.
What may not be compelled judicially, however, is the nonperformance of the duty mandated by § 11-46-55(a). In other words, the judiciary may not order a municipal governing body to disobey or disregard its clearly expressed, statutory duty. Thus, the Baldwin County Circuit Court was without the power to orderas it did on October 1, 1996that the city council "withhold certification of a candidate in the two races, i.e., the Mayor's race and the race for Council *806 member place number 2" (emphasis added) during the pendency of the election contest.
It was on the basis of Pettus that the trial court ordered the city council to disregard § 11-46-55(a), that is, not to certify the apparent winner, as required by the statute. In its October 4, 1996, order, the trial court explained:
"In City of Talladega v. Pettus, 602 So.2d 357 (Ala.1992), the Court stated that the distinction in Section 17-22A-21 between `state and local office' in the first sentence and `state and county office' in the second sentence prohibited a circuit court from making inquir[ies] as to FCPA compliance after a city council issues a [certificate of] election.... The Court went on to state that a circuit court can prevent the issuance of a certificate of ... election to municipal office, but once the certificate is issued, the circuit court is without authority to revoke it."
Choosing, therefore, what it may have considered to be the lesser of two evils, the trial court sought to "prevent the issuance of ... certificate[s] of election." Pettus, 602 So.2d at 359. The only alternative would have been to allow the certificates to issue, which result would, under Pettus, have barred all further inquiry into the propriety of the election. This is true because the legislature did not authorize the city council to "`go behind [the election returns] or inquire into fraud or irregularity.'" Sears, 551 So.2d at 1056. That latter alternative would, under Pettus, have deprived the voters of all remedial relief from the consequences of election irregularities of whatever nature or degree.
The legislature could not have intended either alternative. It did not intend for the courts of this state to order municipal governing bodies to disregard the legislature's statutory mandates. Neither did it intend to deprive the voters of every meaningful opportunity to adjudicate allegations of fraud or other election irregularities.
Significant in this connection are the policies and purposes of legislation regulating entrance into, and conduct within, Alabama public office. Specifically, the legislature has declared that "[i]t is important that there be public confidence in the integrity of government," Alabama Code of Ethics for Public Officials ("Ethics Act"), Ala.Code 1975, § 36-25-2(a)(4) (emphasis added), and, further, that it is the policy of Alabama to "protect[ ] the integrity of all governmental units of this state." Section 36-25-2(d) (emphasis added).[3] The facts of this case have amply demonstrated that Pettus's construction of § 17-22A-21 will not further these goals and policies. Denying voters every meaningful opportunity to correct election improprieties will neither further "public confidence in the integrity of government" nor "protect[] the integrity of all governmental units of this state."
In short, Pettus's construction of § 17-22A-21 is unworkable. Therefore, to the extent it construes the second sentence of § 17-22A-21 as excluding municipal offices, Pettus is overruled.
It must be remembered, however, that, even though we today refuse to follow Pettus, when this mandamus petition was filed Pettus was prima facie the caselaw that controlled the resolution of this dispute. Krages had every reason to believe, and apparently did believe, that this Court would follow Pettus. Under Pettus, given the severe limitations on the amount of time given municipal governing bodies to issue certificates, a writ of mandamus would, in most, if not all, cases involving allegations of irregularity in such elections, have provided the only realistic means of preventing the issuance of an election certificate and the consequent application of the Pettus rule barring judicial review. We will, therefore, proceed to the merits of the issues raised in Krages's petition.

*807 A. The Effect of the Post-election Filing

It is undisputed that Krages did not comply with § 17-22A-8(a), which provides in part: "The treasurer of each principal campaign committee or other political committee shall file with the Secretary of State or judge of probate, as designated in Section 17-22A-9, reports of contributions and expenditures... between five and 10 days before a run-off election." (Emphasis added.) In other words, it is undisputed that Krages filed the "contributions and expenditures" report ("the report") required under this provision on September 18, 1996, the day after the runoff election.
Krages contends, however, that, because he ultimately filed the reportalbeit, on the day after the electionhe did not "fail to file any statement or report required by" the FCPA, within the meaning of § 17-22A-21. Specifically, he argues, § 17-22A-21 "does not state that a certificate of election shall not be issued to a candidate who has failed to file a report `within (5) days of the election'" but, he says, "The statute simply states that no certificate shall be issued to any person elected who shall fail to file the required report." Petitioner's Reply Brief, at 9 (emphasis added). "In other words," he contends, "§ 17-22A-21 does not specify when the ... reports must be filed; it merely requires that [they] be filed prior to issuance of a certificate of election." Id. (emphasis in original). Thus, he reasons, "any defect in filing was cured and the certificate was due to be issued to him (once he filed the required report)." Id. (emphasis added). This case thus requires us, once again, to address the consequences of noncompliance with the reporting requirements of the FCPA.
These consequences were most recently discussed in Davis v. Reynolds, 592 So.2d 546 (Ala.1991). In that case, this Court discussed the consequences of filing "a statement designating [a candidate's] principal campaign committee" after the period specified by § 17-22A-4, but before the day of the election. 592 So.2d at 547. In doing so, we commented on the "primary laudable purpose" of the FCPA, id. at 555, which, we stated, was to "inform the voting public of the source of a candidate's financial support" and, thereby, to "aid the voting public in choosing its [government] officials." 592 So.2d at 556.
We reasoned, however, that this purpose could be accomplished only as long as candidates comply with the requirements of the FCPA to "disclose campaign contributions and expenditures prior to elections." Id. at 555 (emphasis added). Thus, we reasoned, a winning candidate who waits until after the election to disclose the required information, "forfeit[s] the election." Id.[4]
As Davis explained, the disclosure obligations are so fundamental to the purposes and objectives of the FCPA that a disclosure offered to the voting public only after the election constitutes an incurable default. This is so, of course, because a post-election disclosure simply cannot provide the benefits the legislature sought to bestow upon the voting public by passage of the FCPA.
To be sure, in Davis we overruled Megginson v. Turner, 565 So.2d 247 (Ala.1990), which had construed the FCPA to require a forfeiture for any defect in the reporting requirements, even one that was ultimately filed well before the election. Davis, 592 So.2d at 556; Id. at 558 n. 8 (Maddox, J., concurring in part and dissenting in part). However, Krages's interpretation of § 17-22A-21, namely, that a candidate may cure a defect in his or her compliance with the reporting requirements by filing at any time before the certificate is issuedeven after the electionwould render the FCPA illusory. We hold, therefore, that Krages, who waited until after the election to file the reports required by § 17-22A-8, "fail[ed] to file" within the meaning of § 17-22A-21, and, consequently, may not be certified the winner of the mayoral election.

B. The Remedy for Noncertification
This holding does not, however, suggest the conclusions of the trial court, namely, (1) *808 that because of Krages's default and forfeiture, Jerry Davidson must be certified the winner; and (2) that Krages may not hold the office under any circumstances. Particularly relevant in this connection is Ala.Code 1975, § 17-15-6, which provides in part:
"No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person...."
(Emphasis added.) This section strictly limits the judiciary's power to "affect" the procedures by which Alabama's public representatives are elected and limits the remedies for election irregularities to those remedies specifically authorized by the legislature.
The sole authority cited by the respondents for the certification of a candidate who did not receive a majority of the votes is Pettus. Specifically, the plaintiffs cite that portion of the principal Pettus opinion that stated:
"[U]nder the provisions of § 17-22A-21, the court did not have the jurisdiction to revoke the certificate of election issued to Barton. Had Pettus filed the action before the certificate was issued or if he had challenged Barton's noncompliance with the provisions of the FCPA before the election, then the court would have had jurisdiction to grant whatever relief was appropriate."
602 So.2d at 360 (emphasis added). The respondents' reliance on Pettus is based on two principles that they derive from this last-quoted sentence, namely (1) that a trial court has jurisdiction to order a municipal governing body not to issue a certificate as required by § 11-46-55, and (2) that in the interim, the court can fashion any remedy it chooses. For several reasons, however, their reliance is misplaced.
First, as we have explained previously in this opinion, we reject the two primary propositions set forth in Pettus, namely, (1) that a trial court has no jurisdiction to revoke a certificate of election to a municipal office; and (2) that the trial court has jurisdiction to order a municipal governing body not to issue a certificate as required by § 11-46-55. Second, the statement of the corollary principle, which is that until a certificate is issued the judiciary may fashion any remedy it chooses, is clearly dictum. But even if the statement were not dictum, such a principle would violate § 17-15-6. Consequently, we also overrule Pettus to the extent it would authorize the certification of a candidate who did not receive the necessary majority of votes.
Krages and the City both contend that this case is governed by § 11-46-70, pertaining to the "contest of elections." That section provides in part: "If the person whose election is contested is found to be ineligible to the office, judgment must be entered declaring the election void, and the fact must be certified to the municipal governing body. The vacancy in such office shall be filled in the manner prescribed by law." (Emphasis added.) Krages and the City argue that if Krages's default on the disclosure requirements of § 17-22A-21 disqualifies him from certification, then his disqualification renders him "ineligible" within the meaning of § 11-46-70. This ineligibility creates a "vacancy," which, they contend, is to be filled pursuant to Ala.Code 1975, § 11-43-42(b). That section provides in part:
"In the event of a vacancy from any cause in the office of mayor [in a city of fewer than 12,000 inhabitants], the council shall fill the vacancy either from its own membership or from without the membership of the council. The person elected by the council to fill the vacancy in the office of mayor shall be a qualified elector in the municipality and must meet all other legal qualifications required by law for the performance *809 of the duties of the office to which elected."
Judge Partin rejected this argument of Krages and the City, reasoning that § 11-43-42(b) would permit the city council to fill the vacancy with anyoneincluding Krages. He concluded that such a result would be inconsistent with § 17-22A-21, because it "would," he states, "penalize one who follow[ed] the law and potentially reward[ ] the one who [broke] the law." Brief of Respondent [Judge] Charles C. Partin ... in Response to Petition for Emergency Mandamus, at 6. We agree that Krages would be permitted to hold the office pursuant to § 11-43-42(b), but we disagree with the conclusion that the selection pursuant to § 11-43-42(b) of a person who had defaulted on obligations imposed by the FCPA is inconsistent with § 17-22A-21.
As we have stated previously in this opinion, the purpose of the FCPA is to "inform the voting public of the source of a candidate's financial support," and, thereby, to "aid the voting public in choosing its [government] officials." Davis v. Reynolds, 592 So.2d 546, 556 (Ala.1991) (emphasis added). The objective of § 17-22A-21 is to ensure implementation of the FCPA. However, municipal governing bodies are not "the voting public." They are deliberative bodies invested by the legislature with "legislative powers and other powers granted to cities and towns." Ala.Code 1975, § 11-43-43. Simply stated, the FCPA in general, and § 17-22A-21 in particular, have no bearing on municipal governing bodies functioning within the context of § 11-43-42(b). In effect, § 11-43-42(b) constitutes a method of mayoral selection that is an alternative to election by the voting public.
Thus, because it is an alternative method, the municipal governing body is not prohibited from choosing as mayor a person who, solely because of failure to file a disclosure report before the day of the election, was "not eligible ... at the time of such election," § 11-46-69 (emphasis added), or who, otherwise stated, was "ineligible [for certification of election] to the office," § 11-46-70. At any rate, § 17-15-6 forbids the judiciary to fashion a remedy of its own choosing in an attempt to correct what it perceives as an inequity.
For these reasons, the trial court's October 4, 1996, order directing the city council to certify Davidson as the winner of the September 17, 1996, mayoral election was entered in violation of Krages's clear, legal right. The petition for a writ of mandamus directing the trial court to vacate that order is, therefore, granted. The trial court is directed to order the revocation of the certificate of election awarded Davidson pursuant to its October 4, 1996, order, and to instruct the city council to select a mayor according to § 11-43-42(b).

II. Case No. 1960063Candidate Haywood Baker
The facts underlying Baker's election dispute differ from those discussed in Part I of this opinion in only one material respect. Whereas Krages filed his FCPA report on September 18, 1996, the day after the election, Baker, at approximately 12:00 noon on September 17, 1996, filed his "Report of Contributions and Expenditures" ("Report"), which Report was required by § 17-22A-8(a). September 17 was, of course, the day of the election.
We have held that a default on FCPA disclosure obligations does not require the winner of an election to forfeit the election, as long as the required report is filed before the election. Davis v. Reynolds, 592 So.2d 546 (Ala.1991). We held in Part I of this opinion that a default on FCPA disclosure obligations does require the winner of an election to forfeit the election if the required report is filed only after the election. The question presented in this appeal is, therefore, whether an FCPA report filed on the day of the election is filed before the election, within the meaning of Davis.
Candidates for election to "local" offices, such as those involved here, are required to file their FCPA forms in the office of the "judge of probate of the county in which the office is sought." Ala.Code 1975, § 17-22A-9. Baker contends that "[t]here is no election until the polls close and the votes are tabulated." Brief of Appellee Haywood Baker, at 8 (emphasis added). Thus, he argues, *810 a candidate who files before the probate office closes on the day of the election has satisfied the rule set forth in Davis. We disagree with this argument.
The purpose of the FCPA is, we reiterate, to "inform the voting public of the source of a candidate's financial support" and, thereby, to "aid the voting public in choosing its [government] officials." Davis, 592 So.2d at 556. These objectives can be accomplished, however, only as long as every potential voter has an opportunity to inspect a candidate's FCPA reports before voting. Baker's argument is patently inconsistent with Davis.
We hold, therefore, that Baker, who did not file the reports required by § 17-22A-8(a) until the day of the election, "fail[ed] to file," within the meaning of § 17-22A-21, and, consequently, may not be certified as the winner of the election for city council, Place Two. The judgment of the trial court is reversed, and the cause is remanded with directions to order the revocation of Baker's certification.
Analysis of the issues and authority for filling the vacancy created in Place Two by Baker's ineligibility for certification parallels that in Part One of this opinion regarding the filling of the mayoral vacancy. See §§ 11-46-69 to -70. The "manner prescribed," § 11-46-70, for filling the vacancy in Place Two is set forth in § 11-43-41. That section provides that "[v]acancies in the office of the aldermen in any city or town shall be filled by the council at the next regular meeting or any subsequent meeting of the council."
As we discussed in Part I of this opinion, the filling of a vacancy by the city council is not synonymous with certification pursuant to an election and § 11-46-55. This cause is, therefore, remanded with directions to the trial court to instruct the city council to fill the vacancy in Place Two according to § 11-43-41.

III. Case No. 1960114Krages's Cross Appeal
The issues raised in Krages's cross appeal have been fully addressed and resolved in Part I of this opinion. Therefore, the cross appealcase 1960114is dismissed as moot.

IV. Summary
In summary, the petition for a writ of mandamus (case 1952161) is granted. In case 1960063, the judgment is reversed and the cause is remanded with directions. The cross appeal (case 1960114) is dismissed.
1952161 PETITION GRANTED.
1960063 REVERSED AND REMANDED WITH DIRECTIONS.
1960114 CROSS APPEAL DISMISSED.
SHORES, KENNEDY, and COOK, JJ., concur.
ALMON and BUTTS, JJ., concur in the result.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur in the result but dissent as to the reasoning, with opinion.
SEE, J., recuses.
HOUSTON, Justice (concurring in the results reached but dissenting as to the reasoning of the main opinion).
In what can most charitably be described as obiter dicta, the Court is judicially legislating.
Alabama Code 1975, § 17-22A-21, which is part of the Fair Campaign Practices Act, provides:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter."
(Emphasis added.)
Alabama Code 1975, § 17-22A-2(7), part of the "Definitions" section of the Fair Campaign Practices Act, provides this definition:
"LOCAL OFFICE. Any office under the constitution and laws of the state, except circuit, district or legislative offices, filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality."
Section 17-22A-21, after the sentence quoted above, continues with the following *811 sentence, which has absolutely nothing to do with the resolution of this case:
"A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
(Emphasis added.)
Section 17-22A-21 means what it says, and the term "local office" is specifically defined in the definitions section of the Fair Campaign Practices Act; and the word "county," instead of the defined phrase "local office," is used in the second sentence of § 17-22A-21. The number of counties and their names are set out in Ala.Code 1975, § 11-1-1; "the City of Orange Beach" is not among them.
Why the difference in the use of words in the first and second sentences? That is the business of the Alabama Legislature, because I find nothing in the statute or in Act No. 88-873, Acts of Alabama 1988, that indicates that the Legislature inadvertently omitted the words "local office" or inadvertently added the word "county." However, the last sentence of § 17-22A-21 has absolutely nothing to do with the resolution of this case, and why this Court feels compelled to rewrite that sentence is beyond my comprehension.
I am not persuaded that § 17-22A-21 is unworkable or unjust. It worked remarkably well for the trial judge, who followed the direction of the first sentence of § 17-22A-21 and ordered that the certificate of election not be issued to the person elected who had failed to file the statement or report required to be filed by the Fair Campaign Practices Act.
The main opinion, again in dicta, states that "the nonperformance of the duty mandated by § 11-46-55(a)" may not be compelled judicially. 689 So.2d at 805. Whether that is correct or not is irrelevant, for there is another duty, arising subsequent to the duty imposed by Acts of Alabama 1982, No. 82-458 (which was last amended by § 11-46-56), and that is the duty imposed by Act No. 88-873that "[a] certificate of election... not be issued to any person elected... to ... local office who shall fail to file any statement or report required by this chapter." (Emphasis added.) Section 24 of Act No. 88-873 provides, in pertinent part, that "all laws and parts of laws in conflict herewith are hereby repealed." Therefore, to the extent that § 11-46-55(a) compelled a municipal governing body to forthwith issue a certificate of election to the candidate in each race who received the most votes, it was repealed or superseded if the candidate who received the most votes had not filed any statement or report required by the Fair Campaign Practices Act. The trial court required the municipal governing body of Orange Beach to withhold certification of candidates who did not file the required reports. In doing so, it did not err.
The per curiam opinion purports to overrule City of Talladega v. Pettus, 602 So.2d 357 (Ala.1992). That opinion interprets § 17-22A-21 in the only way that it can be interpreted without violating the separation of powers doctrine and judicially legislating. If the legislature meant for "county" to mean "local office," it can amend § 17-22A-21 by substituting "local" for "county" in the second sentence. This has nothing to do with this case, because Jerry Davidson, who was certified mayor by the municipal governing body of Orange Beach, had not failed to file the reports required by the Fair Campaign Practices Act, so far as I can ascertain from the record. Therefore, the last sentence of § 17-22A-21 has no field of operation in the facts before this Court.
The trial court did err in directing the municipal governing body of Orange Beach to certify Jerry Davidson. Until all election contests have been finally adjudicated, there is a vacancy in the office of mayor of Orange Beach, which the city council had the right and duty to fill pursuant to Ala.Code 1975, § 11-43-42(b). I agree with the main opinion that nothing in the Fair Campaign Practices Act or other parts of the Alabama Code would prohibit the city council from appointing Bert Krages or, for that matter, Jerry Davidson, or any other qualified elector in Orange Beach who meets the qualifications required by law for the performance of the duties of the office of mayor.
*812 I also agree that the city council had the right and duty to fill any vacancy in the office of alderman pursuant to § 11-43-41.
HOOPER, C.J., and MADDOX, J., concur.
NOTES
[1] Also named as a defendant was Mike Schiehl; he is no longer involved in these cases.
[2] It must be remembered that although a "local office" is not necessarily a "county" office, a "county" office is a local office, as defined in § 17-22A-2(7).
[3] The Ethics Act, at § 36-25-30, declares that its provisions are to "be construed in pari materia with other laws dealing with the subject of ethics." The FCPA, § 17-22A-23, requires that its "provisions be construed in pari materia with other laws regulating political contributions." Section 36-25-2 is, therefore, to be construed in pari materia with provisions of the FCPA. See Hunt v. Tucker, 875 F.Supp. 1487, 1517 (N.D.Ala. 1995) (construing provisions of the FCPA and the Ethics Act in pari materia).
[4] We carefully distinguished the consequences of a post election disclosure from those of an untimely pre-election disclosure. In the latter event, as was the case in Davis, the candidate was subject, we determined, only to the misdemeanor penalties imposed by § 17-22A-22, rather than to the harsher, election-forfeiture penalty imposed by § 17-22A-21. 592 So.2d at 555.