730 So.2d 1179 (1999)
Iris Gay ETHERIDGE
v.
STATE of Alabama ex rel. A. Robert OLSON.
1971223.
Supreme Court of Alabama.
April 2, 1999.
*1180 L.P. Sutley and Spencer E. Davis, Jr., of Murchison & Sutley, Foley, for appellant.
H. William Wasden and J. Robert Turnipseed of Pierce, Ledyard, Latta & Wasden, P.C., Mobile, for appellee.
HOUSTON, Justice.
Iris Gay Etheridge appeals from a summary judgment for the State of Alabama ex rel. A. Robert Olson revoking her certificate of election. Exercising jurisdiction under Ala.Code 1975, § 6-6-598 (authorizing the contest of an election in a quo warranto action only if the election cannot be contested in another statutory proceeding), the trial court revoked Ms. Etheridge's certificate because she had failed to comply with the filing requirements of the Fair Campaign Practices Act ("FCPA"), Ala.Code 1975, § 17-22A-1 et seq.[1] The summary judgment declared vacant Ms. Etheridge's position on the Orange Beach City Council. We reverse and remand.
The parties disagree over whether the State could have contested Ms. Etheridge's election under Ala.Code 1975, § 11-46-69, which, in pertinent part, provides:
"(a) The election of any person declared elected to any office of a city or town may be contested by any person who was at the time of the election a qualified elector of such city or town for any of the following causes:
". . . .
"(2) The person whose election to office is contested was not eligible thereto at the time of such election;
". . . .
"(b) Any contest of such an election must be commenced within five days after the result of the election is declared...."
According to Ms. Etheridge, the trial court lacked subject-matter jurisdiction over this quo warranto action under § 6-6-598 because, she says, the State could have contested her election under § 11-46-69. See Ala. Code 1975, § 17-15-6, which states in part:
"No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be *1181 specially and specifically enumerated and set down by statute...."
See also Harvey v. City of Oneonta, 715 So.2d 779 (Ala.1998).
Citing City of Talladega v. Pettus, 602 So.2d 357 (Ala.1992), the State takes the position that it had no way of challenging Ms. Etheridge's election under § 11-46-69. In Pettus, two Justices, construing § 17-22A-21 (part of the FCPA), stated that a certificate of election already issued to any person elected to a municipal office could not be judicially revoked for noncompliance with the FCPA. Five Justices concurred in the result reached in Pettus. The record indicates that the Orange Beach City Council, in accordance with § 11-46-55(a), declared Ms. Etheridge elected and issued her a certificate of election at a meeting of the council on October 1, 1996. According to the State, it was not until a decision was announced on February 7, 1997, in Ex parte Krages, 689 So.2d 799 (Ala.1997), that it had a statutory basis for challenging Ms. Etheridge's election under the FCPA. In Krages, three Justices purported to overrule Pettus, stating that a certificate of election to a municipal office already issued could be revoked. Five Justices concurred in the result reached in Krages, three of them dissenting as to the reasoning of the lead opinion. The State points out that the five-day limitations period for filing an election contest under § 11-46-69 had expired by the time Krages was announced; therefore, it argues, a quo warranto action provided its only statutory basis for challenging Ms. Etheridge's election and revoking her certificate of election.
Although the parties have ably framed their issue as being whether the State could have filed an election contest under § 11-46-69, we see a more fundamental issue that needs to be addressedwhether the trial court had jurisdiction to revoke Ms. Etheridge's certificate of election in any proceeding, whether in an election contest under § 11-46-69 or in a statutory quo warranto action. In this respect, we note that neither Pettus nor Krages has any precedential value. See Harvey, supra.[2] Therefore, we are not constrained by the doctrine of stare decisis, and we take this opportunity to revisit the issue whether § 17-22A-21 authorizes the revocation of a certificate of election to a municipal office.[3]
The lead opinion in Pettus, which addressed this issue for the first time, reads in pertinent part as follows:
"A court does not have the jurisdiction to interfere in an election result, unless a statute authorizes it to do so. Ala.Code 1975, § 17-15-6, divests courts of such jurisdiction. That statute provides, in pertinent part:
"`No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute ...'
"This Court, in Turner v. Cooper, 347 So.2d 1339, 1346 (Ala.1977), said that `[c]ontests of elections are statutory creations, except insofar as we have noted, and the statutory requirements must be strictly complied with' (citations omitted).
"Is a trial court authorized, by statute, to revoke a certificate of election issued to a winning candidate in a municipal election? We think not. A court can prevent the issuance of a certificate of election to a municipal office, but, once the certificate is issued, the court is without authority to revoke it. Section 17-22A-21 states:

*1182 "`A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked.'
"(Emphasis added [in Pettus].)
"The first sentence in the statute gives the Court the express power to prevent the issuance of a certificate of election to any person nominated to a `state or local office,' which is defined by § 17-22A-2(7) as `[a]ny office under the constitution and laws of the state, except circuit, district or legislative offices, filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality,' but the second sentence of § 17-22A-21 omits the term `local office' and substitutes instead the term `county office.' It seems clear that the legislature deliberately made no provision for the revocation of a certificate of election in a municipal election. This Court, therefore, has no alternative but to hold that the legislature intentionally did not authorize the revocation of a municipal certificate of election."
602 So.2d at 359-60. (All emphasis in Pettus.)
In Krages, three Justices concluded that § 17-22A-21 was ambiguous and that Pettus's interpretation of that section was contrary to legislative intent. The lead opinion in Krages states:
"In short, Pettus's construction of § 17-22A-21 is unworkable. Therefore, to the extent it construes the second sentence of § 17-22A-21 as excluding municipal offices, Pettus is overruled."
689 So.2d at 806. (Emphasis original.)
After carefully reexamining Pettus and Krages, we conclude that Pettus interpreted § 17-22A-21 in the only way that it could be interpreted without violating the separation-of-powers doctrine and judicially legislating. As was noted in Pettus, § 17-22A-2(7), part of the "Definitions" section of the FCPA, provides this definition:
"LOCAL OFFICE. Any office under the constitution and laws of the state, except circuit, district or legislative offices, filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality."
The second sentence of § 17-22A-21 states:
"A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
(Emphasis added.) Section 17-22A-21 is not ambiguous. It means what it says, and the term "local office" is specifically defined in the definitions section of the FCPA. The word "county," instead of the defined term "local office," is used in the second sentence of § 17-22A-21. The number of counties and their names are set out in Ala.Code 1975, § 11-1-1; "the City of Orange Beach" is not among them.
Therefore, consistent with the rationale of the lead opinion in Pettus, we hold that a certificate of election to a municipal office is not subject to revocation for failure of the person elected to comply with the FCPA and, therefore, that the trial court had no jurisdiction to revoke the certificate of election issued to Ms. Etheridge.
We note again, as we have done on previous occasions, that a court does not have jurisdiction to interfere in an election result unless a statute authorizes it to do so. The Legislature has made this abundantly clear. See § 17-15-6. We strongly urge the Legislature to reexamine § 17-22A-21. If in enacting that provision the Legislature meant for the term "county office" to mean "local office," it can, and should, amend § 17-22A-21 by substituting the word "local" for the word "county" in the second sentence. We also urge the Legislature to reexamine the first sentence of § 17-22A-21 in conjunction with § 11-46-69(a)(2). The first sentence of § 17-22A-21 states:
"A certificate of election or nomination shall not be issued to any person elected or *1183 nominated to state or local office who shall fail to file any statement or report required by this chapter."
This provision indicates that the Legislature envisioned a workable procedure whereby the qualification of a candidate for a municipal office could be contested based on noncompliance with the FCPA and the issuance of a certificate of election to that candidate could be enjoined. However, given the fact that a municipal election can be contested under § 11-46-69 only after the challenged candidate has been declared, by the municipal governing body acting in accordance with § 11-46-55(a), to have been elected, there is usually a very narrow window of opportunity (if an opportunity exists at all) in which a contest can be filed and an injunction obtained to prevent the issuance of a certificate of election.[4] It appears that § 11-46-55(a) contemplates that the municipal governing body will forthwith issue a certificate of election to the person declared elected. As previously noted, the city council declared Ms. Etheridge elected and issued a certificate of election to her at the same council meeting. Rejecting language to the contrary in Pettus, this Court held in Harvey, supra, that a trial court has no jurisdiction over a declaratory-judgment action filed before an election in an attempt to enjoin the issuance of a certificate of election to a candidate who has not complied with the FCPA. It seems, therefore, that § 11-46-69(a)(2) would be available to contest a candidate's qualification under the FCPA only in specific instances where the municipal governing body declared a candidate elected and then delayed issuing its certificate of election to that candidate. However, in those instances where there is insufficient time following the declaration of election to obtain an injunction against the issuance of the certificate of election, there would appear to be no practical means of redress under § 11-46-69(a)(2). This, of course, raises the question, which we leave for another day, whether, under the existing statutory framework, the trial court would have jurisdiction over a quo warranto action filed immediately after the election, but before the municipal governing body had declared a winner, challenging the qualifications of a candidate under the FCPA and seeking to enjoin the issuance of a certificate of election.
For the foregoing reasons, the judgment is reversed and the case is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SEE, LYONS, and BROWN, JJ., concur.
COOK, J., concurs in the result and dissents from the rationale.
COOK, Justice (concurring in the result; dissenting from the rationale).
I agree with the majority that the trial court erred in revoking the certificate of election of Iris Etheridge to the office of councilperson for the City of Orange Beach. However, I respectfully, but earnestly, disagree with the opinion to the extent it rejects Ex parte Krages, 689 So.2d 799 (Ala.1997), and rehabilitates City of Talladega v. Pettus, 602 So.2d 357 (Ala.1992), which is ill-reasoned and unworkable and which three Justices in Krages correctly sought to overrule.
I particularly disagree with the majority when it states: "After carefully reexamining Pettus and Krages, we conclude that Pettus interpreted [Ala.Code 1975,] § 17-22A-21 in the only way that it could be interpreted without violating the separation-of-powers doctrine and judicially legislating." 730 So.2d at 1182 (emphasis added). While the words "judicially legislating" may be currently *1184 in vogue, the rule of omitted words has a history of some length and experience. See Pace v. Armstrong World Industries, Inc., 578 So.2d 281 (Ala.1991); Walker v. Kilborn, 46 Ala.App. 695, 248 So.2d 736 (Ala.Civ.App. 1971); State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726 (1953). I do not believe a court's use of recognized rules of statutory construction to implement legislative intent rises in any regard to the level of "judicial legislation."
As this court stated in State v. Calumet & Hecla Consol. Copper Co., supra, 259 Ala. at 232, 66 So.2d at 729 (quoting 59 C.J. 992-93):
"Words Omitted. Where it appears from the context that certain words have been inadvertently omitted from a statute, the court may supply such words as are necessary to complete the sense, and to express the legislative intent, but it cannot supply words purposely omitted, and should supply an omission only when the omission is palpable and the omitted word plainly indicated by the context; and words will not be added except when necessary to make the statute conform to the obvious intent of the legislature or prevent the act from being absurd; and where the legislative intent cannot be accurately determined because of the omission, the court cannot add words so as to express what might or might not be intended."
I concurred in the main opinion in Krages because I believed, based on the context of the statute in question, the Legislature intended to include a "local office" within the term "county office." The legislative intent in this case becomes clear when, in addition to applying the rule of omitted words, we apply that rule of statutory construction providing that when "`a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the legislature intended that [construction] which is workable and fair.'" See Ex Parte Krages, supra, 689 So.2d at 805 (quoting earlier cases). Pettus is particularly unworkable and unfair in its construction of § 17-22A-21 and, in addition, it grants power to the circuit court in derogation of the statute.
Pettus purports to hold that a trial judge has the power to order election officials not to perform ministerial duties clearly required of them by the Legislature. Specifically, Ala. Code 1975, § 11-46-55(a), provides:
"Not later than 12:00 noon on Wednesday after the election as required in this article the municipal governing body shall proceed to open the envelopes addressed to such governing body which have been delivered by the several returning officers to the municipal clerk, canvass the returns and ascertain and determine the number of votes received by each candidate and for and against each proposition submitted at such election. If it appears that any candidate or any proposition in such election has received a majority of the votes cast for that office or on that question, the municipal governing body shall declare said candidate elected to such office or said question carried, and a certificate of election shall be given to such persons by the municipal governing body or a majority of them, which shall entitle the persons so certified to the possession of their respective offices immediately upon the expiration of the terms of their predecessors as provided by law."
(Emphasis added.) As the emphasized portions of this statute illustrate, the "municipal governing body" has no discretion to refuse to issue a certificate of election to a municipal officer-elect.
The lead opinion in Krages properly acknowledged this legislative mandate, stating:
"The legislature, itself, sought to ensure the strict performance of this duty through the imposition of criminal sanctions for its nonperformance. Specifically, Ala.Code 1975, § 11-46-59(c), subjects to a minimum fine of $100 `[a]ny mayor or other chief executive [municipal] officer ... who willfully and knowingly neglects, fails or refuses to perform any of the duties prescribed.' However, because the certification of municipal election winners is a clearly defined, nondiscretionary duty, performance may also be compelled by a writ of mandamus....
"What may not be compelled judicially, however, is the nonperformance of the *1185 duty mandated by § 11-46-55(a). In other words, the judiciary may not order a municipal governing body to disobey or disregard its clearly expressed, statutory duty."
689 So.2d at 805 (emphasis in original).
Amazingly, the lead opinion in Pettus flouts this legislative mandate. It states that a circuit court can, in fact, prevent municipal election officials from issuing "a certificate of election to a municipal office." Pettus, 602 So.2d at 359.
The Pettus opinion arrives at this result through a stilted, arcane construction of Ala. Code 1975, § 17-22A-21. That section provides:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
(Emphasis added.) Under the guise of "strict construction," the lead opinion in Pettus and now, the majority in this case insists that the Legislature deliberately created an anomaly by substituting "county office" in the second sentence for "local office" in the first sentence, even though such a change would bring § 17-22A-21 into direct conflict with § 11-46-55(a).
The anomaly thus created is that, if, as the majority insists, the term "local office" does not include a "county office," then the first sentence of § 17-22A-21 does not address county offices and the second sentence does not address local offices. Actually, a "county office" is expressly included within the definition of a "local office" in Ala.Code 1975, § 17-22A-2(7), which defines a "local office" as "[a]ny office under the constitution and laws of the state, ... filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality." Under this definition, "a `local office' is not necessarily a `county' office, [but] a `county' office is a local office, as defined in § 17-22A-2(7)." Ex parte Krages, 689 So.2d at 804 n. 2 (emphasis in original). The conflict created by the construction given § 17-22A-21 in the lead opinion in Pettusand now given that section by today's majorityis that § 11-46-55(a) requires municipal-election officials to do that which § 17-22A-21, under that construction, forbids them to do, namely, promptly to certify the election.
Unlike the majority, I understand § 17-22A-21 as though it read:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office, as defined in this chapter, who shall fail to file any statement or report required by this chapter. If a certificate is issued, and it be found in a contest conducted pursuant to § 11-46-69 of this Code, to have been erroneously issued, because of the failure of a person elected or nominated to state or local office, as defined in this chapter, to file any statement or report required by this chapter, the certificate shall be revoked."
This construction would eliminate the anomaly and the conflict created by the lead opinion in Pettus, and it would be consistent with the intent of the Legislature in enacting the Fair Campaign Practices Act. See Krages, 689 So.2d at 806.
It is axiomatic that legislative intent is the "`polestar' of statutory construction." Richardson v. PSB Armor, Inc., 682 So.2d 438, 440 (Ala.1996); see also Jones v. Conradi, 673 So.2d 389, 394 (Ala.1995); Weems v. Jefferson-Pilot Life Ins. Co., 663 So.2d 905, 912 (Ala.), cert. denied, 516 U.S. 971, 116 S.Ct. 434, 133 L.Ed.2d 348 (1995); Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992). Thus, contrary to the majority's implications, the Justices joining the lead opinion in Krages were not "legislating" when they construed an ambiguous statute in a manner consistent with the intent of the Legislature.
Additionally, I must also take issue with the majority when it says: "Section 17-22A-21 is not ambiguous." 730 So.2d at 1182. Of course, it is ambiguous, and the majority admits as much, when, a few lines later in its opinion, it "strongly urge[s]" the Legislature *1186 to "reexamine" it "in conjunction with" §§ 11-46-55 and -69.
In short, of the lead opinions issued in the two cases Krages and Pettus, the one in Krages is by far the better reasoned and the more faithful to the doctrine of separation of powers. The Legislature "did not intend for the courts of this state to order municipal governing bodies to disregard the legislature's statutory mandates." Krages, 689 So.2d at 806. Therefore, the lead opinion in Pettus, not the one in Krages, should be rejected. For these reasons, I concur in the result of today's opinion, but dissent from the rationale.
NOTES
[1] The election was held on August 27, 1996, and a run-off election was held on September 17, 1996. Ms. Etheridge failed to timely file preelection disclosure forms that are required by the FCPA.
[2] Krages has been cited in only two casesHarvey and Derryberry v. Sanders, 695 So.2d 1180 (Ala.1997). Derryberry did not involve the issue with which we are concerned in this case.
[3] This Court normally will not reverse a judgment on a point not argued by the parties. See Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala.1988). However, lack of subject-matter jurisdiction may not be waived by the parties, and it is the duty of an appellate court to consider lack of subject-matter jurisdiction ex mero motu. Ex parte Smith, 438 So.2d 766 (Ala.1983). Furthermore, because of the confusion that has resulted from Pettus and Krages, and because of the importance of the basic issue presented (whether a popularly elected city official could be removed from office approximately 10 months after the election), we believe it would be imprudent for us not to reexamine those decisions.
[4] The Legislature has the power, within constitutional limitations, to provide for the manner in which the result of an election shall be determined and declared. Where the Legislature has so provided, the election is not complete until the legislative mandate is obeyed. The declaration of the result of an election is an indispensable part of the election process. The declaration furnishes the first authentic evidence of what the choice of the people is and by which the person elected can know that he is entitled to the office. See 26 Am.Jur.2d Elections § 400 (1996).

We note that an election contest under § 11-46-69 was filed in Krages, supra, which involved the same municipal election at issue here. However, the specific issue whether the trial court had jurisdiction over that contest (which was filed before the results of the election were declared by the city council) was not presented to or addressed by this Court.