I agree with the majority that the trial court erred in revoking the certificate of election of Iris Etheridge to the office of councilperson for the City of Orange Beach. However, I respectfully, but earnestly, disagree with the opinion to the extent it rejects Ex parte Krages, 689 So.2d 799 (Ala. 1997), and rehabilitates City of Talladega v. Pettus, 602 So.2d 357 (Ala. 1992), which is ill-reasoned and unworkable and which three Justices in Krages correctly sought to overrule.
I particularly disagree with the majority when it states: "After carefully reexamining Pettus and Krages, we conclude that Pettus interpreted [Ala. Code 1975,] § 17-22A-21 in the onlyway that it could be interpreted without violating the separation-of-powersdoctrine and judicially legislating." 730 So.2d at 1182 (emphasis added). While the words "judicially legislating" may be currently *Page 1184 
in vogue, the rule of omitted words has a history of some length and experience. See Pace v. Armstrong World Industries, Inc., 578 So.2d 281
(Ala. 1991); Walker v. Kilborn, 46 Ala. App. 695, 248 So.2d 736
(Ala.Civ.App. 1971); State v. Calumet Hecla Consol. Copper Co.,259 Ala. 225, 66 So.2d 726 (1953). I do not believe a court's use of recognized rules of statutory construction to implement legislative intent rises in any regard to the level of "judicial legislation."
As this court stated in State v. Calumet Hecla Consol.Copper Co., supra, 259 Ala. at 232, 66 So.2d at 729 (quoting 59 C.J. 992-93):
 "Words Omitted. Where it appears from the context that certain words have been inadvertently omitted from a statute, the court may supply such words as are necessary to complete the sense, and to express the legislative intent, but it cannot supply words purposely omitted, and should supply an omission only when the omission is palpable and the omitted word plainly indicated by the context; and words will not be added except when necessary to make the statute conform to the obvious intent of the legislature or prevent the act from being absurd; and where the legislative intent cannot be accurately determined because of the omission, the court cannot add words so as to express what might or might not be intended."
I concurred in the main opinion in Krages because I believed, based on the context of the statute in question, the Legislature intended to include a "local office" within the term "county office." The legislative intent in this case becomes clear when, in addition to applying the rule of omitted words, we apply that rule of statutory construction providing that when "`a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the legislature intended that [construction] which is workable and fair.'" See Ex Parte Krages, supra, 689 So.2d at 805 (quoting earlier cases). Pettus is particularly unworkable and unfair in its construction of § 17-22A-21 and, in addition, it grants power to the circuit court in derogation of the statute.
Pettus purports to hold that a trial judge has the power to order election officials not to perform ministerial duties clearly required of them by the Legislature. Specifically, Ala. Code 1975, § 11-46-55(a), provides:
 "Not later than 12:00 noon on Wednesday after the election as required in this article the municipal governing body shall proceed to open the envelopes addressed to such governing body which have been delivered by the several returning officers to the municipal clerk, canvass the returns and ascertain and determine the number of votes received by each candidate and for and against each proposition submitted at such election. If it appears that any candidate or any proposition in such election has received a majority of the votes cast for that office or on that question, the municipal governing body shall declare
said candidate elected to such office or said question carried, and a certificate of election shall be given to such persons by the municipal governing body or a majority of them, which shall entitle the persons so certified to the possession of their respective offices immediately upon the expiration of the terms of their predecessors as provided by law."
(Emphasis added.) As the emphasized portions of this statute illustrate, the "municipal governing body" has no discretion to refuse to issue a certificate of election to a municipal officer-elect.
The lead opinion in Krages properly acknowledged this legislative mandate, stating:
 "The legislature, itself, sought to ensure the strict performance of this duty through the imposition of criminal sanctions for its nonperformance. Specifically, Ala. Code 1975, § 11-46-59(c), subjects to a minimum fine of $100 `[a]ny mayor or other chief executive [municipal] officer . . . who willfully and knowingly neglects, fails or refuses to perform any of the duties prescribed.' However, because the certification of municipal election winners is a clearly defined, nondiscretionary duty, performance may also be compelled by a writ of mandamus . . . .
 "What may not be compelled judicially, however, is the nonperformance of the *Page 1185 
duty mandated by § 11-46-55(a). In other words, the judiciary may not order a municipal governing body to disobey or disregard its clearly expressed, statutory duty."
689 So.2d at 805 (emphasis in original).
Amazingly, the lead opinion in Pettus flouts this legislative mandate. It states that a circuit court can, in fact, prevent municipal election officials from issuing "a certificate of election to a municipal office." Pettus, 602 So.2d at 359.
The Pettus opinion arrives at this result through a stilted, arcane construction of Ala. Code 1975, § 17-22A-21. That section provides:
 "A certificate of election or nomination shall not be issued to any person elected or nominated to state or local
office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
(Emphasis added.) Under the guise of "strict construction," the lead opinion in Pettus — and now, the majority in this case — insists that the Legislature deliberately created an anomaly by substituting "county office" in the second sentence for "local office" in the first sentence, even though such a change would bring § 17-22A-21 into direct conflict with § 11-46-55(a).
The anomaly thus created is that, if, as the majority insists, the term "local office" does not include a "county office," then the first sentence of § 17-22A-21 does not addresscounty offices and the second sentence does not address local
offices. Actually, a "county office" is expressly included withinthe definition of a "local office" in Ala. Code 1975, § 17-22A-2(7), which defines a "local office" as "[a]ny office under the constitution and laws of the state, . . . filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality." Under this definition, "a `local office' is not necessarily a `county' office, [but] a `county' office is a local
office, as defined in § 17-22A-2(7)." Ex parte Krages, 689 So.2d at 804 n. 2 (emphasis in original). The conflict created by the construction given § 17-22A-21 in the lead opinion in Pettus — and now given that section by today's majority — is that §11-46-55(a) requires municipal-election officials to do that which § 17-22A-21, under that construction, forbids them to do, namely, promptly to certify the election.
Unlike the majority, I understand § 17-22A-21 as though it read:
 "A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office, as defined in this chapter, who shall fail to file any statement or report required by this chapter. If a certificate is issued, and it be found in a contest conducted pursuant to § 11-46-69 of this Code, to have been erroneously issued, because of the failure of a person elected or nominated to state or local office, as defined in this chapter, to file any statement or report required by this chapter, the certificate shall be revoked."
This construction would eliminate the anomaly and the conflict created by the lead opinion in Pettus, and it would be consistent with the intent of the Legislature in enacting the Fair Campaign Practices Act. See Krages, 689 So.2d at 806.
It is axiomatic that legislative intent is the "`polestar' of statutory construction." Richardson v. PSB Armor, Inc.,682 So.2d 438, 440 (Ala. 1996); see also Jones v. Conradi,673 So.2d 389, 394 (Ala. 1995); Weems v. Jefferson-Pilot Life Ins. Co.,663 So.2d 905, 912 (Ala.), cert. denied, 516 U.S. 971 (1995); Exparte Jordan, 592 So.2d 579, 581 (Ala. 1992). Thus, contrary to the majority's implications, the Justices joining the lead opinion in Krages were not "legislating" when they construed an ambiguous statute in a manner consistent with the intent of the Legislature.
Additionally, I must also take issue with the majority when it says: "Section 17-22A-21 is not ambiguous." 730 So.2d at 1182.Of course, it is ambiguous, and the majority admits as much, when, a few lines later in its opinion, it "strongly urge[s]" the Legislature *Page 1186 
to "reexamine" it "in conjunction with" §§ 11-46-55
and -69.
In short, of the lead opinions issued in the two cases Krages
and Pettus, the one in Krages is by far the better reasoned and the more faithful to the doctrine of separation of powers. The Legislature "did not intend for the courts of this state to order municipal governing bodies to disregard the legislature's statutory mandates." Krages, 689 So.2d at 806. Therefore, the lead opinion in Pettus, not the one in Krages, should be rejected. For these reasons, I concur in the result of today's opinion, but dissent from the rationale.